[No. 48264–1.   En Banc.   June 17, 1982.]

THE CITY OF LONGVIEW, *Respondent,* v. THE PUBLIC
EMPLOYEES' RETIREMENT BOARD, ET AL,
*Appellants.*

522

*Kenneth O. Eikenberry, Attorney General,* and *Steven W. Smith* and *Clifford D. Foster, Assistants,* for appellant Retirement Board.

*Odine H. Husemoen,* for appellant Fix.

*Dave C. Spencer, Corporation Counsel,* for respondent.

PEARSON, J.—The Washington Public Employees' and Law Enforcement Officers' and Fire Fighters' (LEOFF) Retirement Board and a disabled fire fighter, Lyle Fix, appeal a decision of the Thurston County Superior Court which construed the disability leave provisions of RCW

41.26.120 contrary to the decision of the LEOFF Retirement Board.

The issue on appeal is whether the 6 months of disability leave payments required by RCW 41.26.120[1] should commence before or after the expiration of Mr. Fix's accrued sick leave benefits, to which he is entitled under his contract of employment with the City.

The LEOFF Retirement Board and Mr. Fix contend the City must pay Mr. Fix all his accrued sick leave and an additional 6-month "disability leave allowance" equal to his full salary. The trial court accepted the City's argument that the 6-month disability allowance commenced on the date the fire fighter became disabled, without regard to his sick leave benefits. As a result, Mr. Fix would be deprived of his accrued sick leave benefits. For the reasons stated below, we reverse the Superior Court decision and reinstate the decision of the LEOFF Retirement Board.

---

[1]At the time this dispute arose, RCW 41.26.120 provided in relevant part:

"Any member . . . may be retired by the disability board, subject to approval by the retirement board . . . for any disability which has been continuous since his discontinuance of active service and which renders him unable to continue his service, whether incurred in the line of duty or not. No disability retirement allowance shall be paid until the expiration of a period of six months after the disability is incurred during which period the member, if found to be physically or mentally unfit for duty by the disability board following receipt of his application for disability retirement, shall be granted a disability leave by the disability board and shall receive an allowance equal to his full monthly salary and shall continue to receive all other benefits provided to active employees from his employer for such period."

RCW 41.26.120 was subsequently amended by Laws of 1981, ch. 294, § 2, p. 1254:

"Any member . . . may be retired by the disability board, subject to approval by the director as hereinafter provided, for any disability which has been continuous since his discontinuance of service and which renders him unable to continue his service, whether incurred in the line of duty or not. No disability retirement allowance shall be paid until the expiration of a period of six months after the discontinuance of service during which period the member, if found to be physically or mentally unfit for duty by the disability board following receipt of his application for disability retirement, shall be granted a disability leave by the disability board and shall receive an allowance equal to his full monthly salary and shall continue to receive all other benefits provided to active employees from his employer for such period."

The parties have stipulated to the facts. The fire fighter, Lyle Fix, was employed by the City of Longview beginning January 1, 1958. He injured his back while attending a fire fighters' training program in October 1970, and was awarded disability leave from October 11, 1970. He returned to work on November 25, 1970, and continued to work for the fire department until January 25, 1974. He was unable to work after January 25 because of back problems. However, he continued to receive from the City his full salary, designated as "sick leave". Mr. Fix apparently intended to return to work when his back problem cleared up, but realized after failing physical tests that he would be unable to do so. On June 18, 1974, he applied to the City of Longview Disability Board for disability retirement. On July 26, 1974, the disability board found Mr. Fix had been continuously disabled since January 26, and granted him a disability retirement allowance. The board decided to place Mr. Fix on disability leave from January 26, 1974, and disability retirement from July 26, 1974. Mr. Fix objected to having his sick leave treated as part of his disability leave. He applied to the LEOFF Retirement Board pursuant to RCW 41.26.120. The LEOFF Retirement Board agreed with Mr. Fix and ordered that disability leave be granted for a full 6 months following the period for which sick leave was paid. Accordingly, on September 30, 1974, the disability board placed Mr. Fix on disability leave from July 1, 1974, and disability retirement from January 1, 1975. The City brought the matter before the LEOFF Retirement Board a second time on stipulated facts. The LEOFF Retirement Board entered an order that periods of sick leave and disability leave were mutually exclusive and sick leave could not be deducted from disability leave. The City appealed this order to the Thurston County Superior Court under the administrative procedure act, RCW 34.04.130. The Superior Court, in a memorandum opinion, decided that the LEOFF Retirement Board, by considering periods of paid sick leave, had exceeded its statutory authority under RCW 41.26, and that its decision expressed in the

order was clearly erroneous. The LEOFF Retirement Board appealed the Superior Court decision to the Court of Appeals and we accepted certification.

The procedures followed in the processing of Mr. Fix's claim for disability retirement are set out in RCW 41.26-.120, a portion of which is set forth in footnote 1. Instead of setting out the balance of that statute in full, we will summarize the parts which are germane to this case.

1. Any member of the LEOFF retirement system who believes himself to be physically or mentally disabled can apply for a disability retirement allowance.

2. An application for a disability retirement allowance must be made within 1 year of "discontinuance of service". ("Service" is defined in RCW 41.26.030(14)(a) as "all periods of employment . . . for which compensation is paid".)

3. Upon receipt of such an application, the disability board arranges for the member to be examined by a medical authority employed by the disability board.

4. If the medical examination establishes to the disability board's satisfaction that the member is disabled from the performance of his duty, and that such disability has been continuous from the discontinuance of service, the member shall be granted a disability retirement allowance.

5. The disability retirement allowance will not be paid until the expiration of a period of 6 months after the disability was incurred. During this 6–month period, the member shall be granted disability leave and receive a disability allowance equal to his monthly salary.

6. If at any time during this 6–month period the disability board finds the member is no longer disabled, his disability leave allowance is canceled and he is restored to duty.

7. At the end of the 6–month disability leave, the member's disability retirement begins, and he receives a disability retirement allowance under RCW 41.26.130, based on 50 percent of his salary at the time of his retirement.

We begin our analysis of this issue by determining when the 6–month disability leave period provided by RCW

41.26.120 begins. The trial court concluded that the Legislature intended that the disability leave should begin when the member ceased "active service". However, RCW 41.26-.120 does not expressly state that the disability leave period begins at the time a member ceases active service. The closest the statute comes to providing a starting point for the period of disability leave is the declaration in the second sentence of former RCW 41.26.120 that the disability leave will run for "a period of six months after the disability is incurred". The statute does not, however, state that the disability leave period must begin immediately after the disability is incurred. So long as the disability leave begins after, rather than before, the member is disabled, the statute is satisfied. In other words, the statute does not specify at what point after the disability is incurred the the disability leave shall begin.

██ It is therefore necessary for this court to supply the omission of the Legislature and determine the time at which the disability leave begins. In making this determination, our primary object is to ascertain and give effect to the intent of the Legislature. *Janovich v. Herron,* 91 Wn.2d 767, 771, 592 P.2d 1096 (1979). The intent of the Legislature in RCW 41.26.120 appears to be that a member of the LEOFF retirement system is entitled to disability leave at full salary for 6 months immediately before beginning disability retirement. Nowhere in the statute is there any suggestion of an intent to interfere with rights to sick leave that a member might have by virtue of a contract with his employer. We would be reluctant to find that such contractual rights were impaired by implication. *See* 3 C. Sands, *Statutory Construction* § 61.06 (4th ed. 1973). Therefore, we interpret the statute so as to give effect to the 6–month disability leave, together with any sick leave to which the member is entitled under his contract of employment.

Mr. Fix was employed by the City of Longview under terms and conditions set out in resolution 843. Section 4(k) of this resolution provides that "police and fire personnel . . . shall expend all accrued sick leave prior to receiving

disability leave payment". Our interpretation of RCW 41.26.120, therefore, requires that Mr. Fix's disability leave begin after the accrued sick leave, to which Mr. Fix is entitled by virtue of this resolution, has been expended.

■ This result is also consistent with the long established practice of the LEOFF Retirement Board. For 10 years the Board has based its interpretation of RCW 41.26-.120 on an informal Attorney General Opinion dated September 9, 1971. In accordance with this opinion, the Board has determined that so long as a member is on sick leave or vacation time, any period of disability leave to which he may be entitled will not have commenced. Such a long–standing practice of the Board may well have created employee expectations which would be violated if the Board's practice were altered. We will not readily adopt a construction which would violate such employee expectations. *Washington Ass'n of Cy. Officials v. State Pub. Employees' Retirement Sys. Bd.,* 89 Wn.2d 729, 733, 575 P.2d 230 (1978).

■ Finally, since the Superior Court's determination in this case, the Legislature has amended RCW 41.26.120. The somewhat obscure phrase "disability is incurred" has been replaced by the phrase "discontinuance of service". Under the amendment, the disability leave period does not begin until after the discontinuance of service. The statutory definition of "service" (RCW 41.26.030(14)(a)) includes "all periods of employment . . . for which compensation is paid". This appears to be sufficiently broad to include periods of sick leave and vacation time. Under the amendment, therefore, disability leave would not begin until accrued sick leave was expended. The amendment appears to be a clarification of the statute and a legislative endorsement of the Retirement Board's interpretation. Although the amendment was not in effect when the dispute before us arose and does not directly apply to this case, it is nevertheless a strong indication of the legislative intention with respect to the original provision. *Williams v. Pierce Cy.,* 13 Wn. App. 755, 760, 537 P.2d 856 (1975).

Accordingly, we reverse the Superior Court and reinstate the order of the LEOFF Retirement Board.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.