[No. 4870–5–III.   Division Three.   May 17, 1983.]

MEL CANNON, ET AL, *Appellants,* v. THE CITY OF MOSES LAKE, *Respondent.*

*Louis Reinwasser* and *Davies, Roberts, Reid, Anderson & Wacker,* for appellants.

*James A. Whitaker, City Attorney,* for respondent.

GREEN, J.—The City of Moses Lake employed Ralph Rogers and Mel Cannon as police officers in 1957 and 1959, respectively. In 1971, the city police officers joined the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF). At that time, Mr. Cannon had accumulated 299 hours of sick leave under existing City resolutions and Mr. Rogers had accumulated 641 hours. In 1979, LEOFF granted Mr. Rogers and Mr. Cannon disability retirement. They then sought payment for the sick leave that had accumulated prior to joining LEOFF and for vacation leave they accumulated during their 6–month disability leave under RCW 41.26.120. The City denied their claims and this action was commenced. Summary judgment was entered for the City dismissing the action and Messrs. Cannon and Rogers appeal.

The sole issue is whether these two retired police officers are entitled to be paid for their accumulated sick leave and the claimed vacation leave.

## SICK LEAVE

At the time the officers joined the LEOFF system, they were permitted to accumulate sick leave to a maximum of 90 days. When the LEOFF system became effective, the

City adopted resolution 516 which, in part, provided:

> Employees of the City of Moses Lake, *excepting members of the Law Enforcement and Firefighter Pension as prescribed under RCW 41.26,* shall accrue sick leave at the rate of eight (8) hours of leave for each full calendar month of employees' service. Sick leave may be accumulated to a maximum of nine hundred and sixty (960) working hours. *Members of the Law Enforcement and Firefighter Pension System shall receive sick leave benefits as provided under RCW 41.26.150 and will not accrue sick leave as provided herein.*

(Italics ours.) This resolution made no disposition of the sick leave that had accumulated pursuant to prior City resolutions.

We find *Longview v. Public Employees' Retirement Bd.,* 97 Wn.2d 521, 646 P.2d 768 (1982), decided subsequent to the trial court's decision, controlling. In that case, a fireman applied to the Longview disability board for disability retirement under LEOFF, RCW 41.26.120. That section provides:

> Any member . . . may be retired by the disability board, subject to approval by the director . . . for any disability which has been continuous since his discontinuance of service and which renders him unable to continue his service, whether incurred in the line of duty or not. No disability retirement allowance shall be paid until the expiration of a period of six months after the discontinuance of service during which period the member, if found to be physically or mentally unfit for duty by the disability board following receipt of his application for disability retirement, shall be granted a disability leave by the disability board and shall receive an allowance equal to his full monthly salary and shall continue to receive all other benefits provided to active employees from his employer for such period.

Prior to making this application, the fireman received full salary, designated "sick leave", over a period of 5 months. The disability board granted his application but treated the sick leave he had been receiving as part of the statutory 6–month disability leave. On appeal, the LEOFF retirement board reversed on the basis sick leave and disability leave

were mutually exclusive and sick leave could not be deducted from disability leave. The Supreme Court affirmed the retirement board, stating:

> Nowhere in the statute is there any suggestion of an intent to interfere with rights to sick leave that a member might have by virtue of a contract with his employer. We would be reluctant to find that such contractual rights were impaired by implication. *See* 3 C. Sands, *Statutory Construction* § 61.06 (4th ed. 1973). Therefore, we interpret the statute so as to give effect to the 6–month disability leave, together with any sick leave to which the member is entitled under his contract of employment.
>
> . . .
>
> This result is also consistent with the long established practice of the LEOFF Retirement Board. For 10 years the Board has based its interpretation of RCW 41.26.120 on an informal Attorney General Opinion dated September 9, 1971. In accordance with this opinion, the Board has determined that so long as a member is on sick leave or vacation time, any period of disability leave to which he may be entitled will not have commenced. Such a long–standing practice of the Board may well have created employee expectations which would be violated if the Board's practice were altered. We will not readily adopt a construction which would violate such employee expectations.

*Longview*, at 526–27.

██ In principle, what happened in the *Longview* case occurred here. The police officers had accumulated sick leave at the time they joined LEOFF. This sick leave was not subsequently used—it remained intact at the time of their application for disability retirement. For reasons not revealed in the record, this accumulated leave question was not raised until near the end of the 6–month disability leave period. If the question had been raised initially, under *Longview* the disability leave would not have commenced until the accumulated sick leave had been used. During that time, the officers would have received their full salary from the City. The officers' failure to raise the question in this manner should not foreclose their entitlement, since

the extent of the City's liability is unaffected by the delay.

The City argues that the employees did not have a vested interest in accrued sick leave and nothing in resolution 516 requires it to "buy up" the sick leave—in fact, it is asserted there was an established policy not to do so when employees terminated their employment. We do not perceive these assertions to be controlling. Officers Cannon and Rogers did not voluntarily terminate their employment but became ill or disabled. They had accumulated sick leave which was not affected by resolution 516 and it was available for their use. Under *Longview*, they were entitled to the sick leave before being required to use the statutory disability leave provided in RCW 41.26.120. Consequently, it is not a matter of the City's "buying up" sick leave; it is a matter of giving the officers their accumulated sick leave when they became sick or disabled.

The contention that the officers' claims are barred by the statute of limitations because the cause of action accrued in 1971 must be rejected. The right to use the sick leave did not arise until the officers became disabled in 1979. Their claim was submitted shortly thereafter.

Consequently, the court erred in denying a recovery for the officers' accumulated sick leave.

## VACATION LEAVE

The officers contend they are entitled to be compensated for vacation leave claimed to have accrued during the 6 months they were on disability leave. They rely upon that portion of RCW 41.26.120 which provides that if disability leave is granted to a LEOFF member, that member "shall continue to receive all other benefits provided to active employees from his employer for such period." The term "employee" used in this statute means "any law enforcement officer". RCW 41.26.030(10). It is the officers' position that under the terms of their collective bargaining agreement with the City, as active law enforcement officers, they would have accrued a specified amount of vacation leave each month. They assert they were entitled to this credit

while on disability leave. On the other hand, the City contends any employee who is sick for more than 1 month is absent in violation of resolution 704 and cannot claim more than 1 month's credit for vacation leave. We disagree with the City's position.

    RCW 41.26.120 provides that law enforcement officers on disability leave receive the same benefits as if they were active employees. This means that Officers Cannon and Rogers are entitled to the same vacation leave credit they would be entitled to if they were actively employed. We need not decide the effectiveness of the alleged policy with respect to other city employees; our decision is limited to employees covered by the LEOFF act.

    The officers' request for double damages, costs and attorneys fees pursuant to RCW 49.52.050, .070 is denied. The issues in this case are fairly debatable and there is no evidence the City acted willfully. *See McAnulty v. Snohomish Sch. Dist. 201,* 9 Wn. App. 834, 515 P.2d 523 (1973); *Simon v. Riblet Tramway Co.,* 8 Wn. App. 289, 505 P.2d 1291, 66 A.L.R.3d 1069 (1973).

Reversed and remanded.

ROE, C.J., and McINTURFF, J., concur.

Reconsideration denied June 23, 1983.

Review denied by Supreme Court September 2, 1983.