[No. 53807-7. En Banc. January 14, 1988.]

THE CITY OF PASCO, *Petitioner,* v. C. ART NAPIER, ET AL, *Respondents.*

C. ART NAPIER, *Respondent,* v. THE CITY OF PASCO, *Petitioner.*

---

*Greg A. Rubstello, City Attorney,* for petitioner.

*Raekes, Rettig, Osborne, Forgette & O'Donnell,* by *Diehl R. Rettig* and *James E. Hurson,* for respondent Napier.

*C. J. Rabideau, Prosecuting Attorney,* for respondent Disability Board.

*Kenneth O. Eikenberry, Attorney General,* and *Ceil Holuk, Assistant,* amici curiae for respondents.

DORE, J.—We reverse a superior court judgment against the City of Pasco for 6 months' disability leave pay. We hold that Napier was entitled to immediate disability retirement benefits from the Washington State Retirement Board on his second application for disability retirement because that application was a continuation of Napier's first application and because he had already received the statutory 6-month period of disability leave from the City of Pasco.

## FACTS

Napier, a fire fighter for the City of Pasco, applied to the Franklin County Disability Board for disability retirement on October 27, 1983. He based his claim on recurring joint pain and extreme fatigue. The Board granted Napier 6 months' disability leave as a preliminary to a decision on disability retirement, pursuant to former RCW 41.26.120.[1] Section .120 provided:

> No disability retirement allowance shall be paid until the expiration of a period of six months after the discontinuance of service during which period the member, if found to be physically or mentally unfit for duty by the disability board following receipt of his application for disability retirement, shall be granted a disability leave by the disability board and shall receive an allowance equal to his full monthly salary and shall continue to receive all other benefits provided to active employees from his employer for such period.

Laws of 1985, ch. 102, §§ 2, 7 (this act was made retroactive to 1970). On March 6, 1984, the Board granted Napier disability retirement, to be effective on April 27, 1984. This decision was forwarded to the director of retirement sys-

---

[1]RCW 41.26.120 provides for disability retirement based on disabilities acquired in the line of duty. RCW 41.26.125, passed in 1985, is a virtually identical statute covering disabilities not acquired in the line of duty. Napier's case falls under section .125, strictly speaking, but he originally applied under section .120. We refer to section .120 here to conform to the record.

tems for review pursuant to RCW 41.26.120(3); the director reversed the Board's decision. The Board subsequently ordered Napier back to work on May 1, 1984.

Napier worked eight shifts during the month of May, then reapplied for disability retirement on June 5, 1984. The Board met on June 6 and granted Napier immediate disability retirement.

After the Board learned, on July 10, that Napier was not receiving disability benefit payments from the City, the Board informed the City that Napier had been granted "disability leave" and requested the City to pay Napier temporary disability benefits. The City refused.

The City filed a declaratory judgment action on July 31, 1984, in Franklin County Superior Court, requesting a declaration that Napier was not entitled to disability leave benefits, because the City had already paid Napier 6 months of such benefits based on his first retirement application, and claiming that it would be unjust if it was forced to pay such temporary benefits twice.

The court granted Napier's motion for summary judgment, giving him a judgment for disability leave benefits from June 6, 1984, to December 6, 1984. The City appealed and obtained a stay pending appeal.

As a result of the stay, Napier filed a second suit claiming sick leave benefits pending the resolution of the appeal. The court granted Napier's motion for summary judgment for sick leave, and awarded the amount of $5,967.17 for his accrued hours, commencing June 5, 1984. The court added the condition that the sick leave benefits should be set off against any eventual recovery on disability benefits. The City consolidated both actions on appeal.

The Court of Appeals affirmed the judgments. It held that the City had failed to exhaust its administrative remedies because it had not appealed the second grant of benefits under RCW 41.26.200. The appellate court also held that Napier's employment contract clearly entitled him to sick leave pending appeal.

Meanwhile, the Board's *second* grant of benefits was

forwarded to the director under RCW 41.26.120(3). On November 16, 1984, the director remanded for further proceedings, holding that the Board had exceeded its authority in granting an immediate disability retirement without first implementing the 6–month disability leave waiting period prescribed by RCW 41.26.120. The Board prepared second and third amended findings in December 1984 and January 1985, respectively. These orders changed the Board's decision from an immediate grant of disability retirement to a grant of 6 months' disability leave beginning June 6, 1984, and disability retirement effective December 6, 1984, *i.e.*, 6 months from the date of Napier's second application. The director affirmed the Board's award of disability retirement based on the third amended findings on February 4, 1985.

The City appealed this decision of the director under the provisions of RCW 41.26.210 and .220, which provide for review de novo upon a hearing before the director. The director refused to consider the City's request that the Board's second grant of 6 months' disability leave be paid by the State Retirement Board. The City of Pasco had previously paid the first 6–month retirement benefits to Napier.

## ANALYSIS

It is undisputed that the illness for which Napier first applied for disability benefits is the same illness on which he based his second application only 1 month after returning to work. The City argues that, in light of this fact, it would be unjust to require it to pay for a second 6 months of disability leave while Napier's eligibility for disability retirement is considered. We agree.

It is well established that a statute is to be interpreted so as to give effect to its purpose while avoiding absurd or pointless consequences. *State v. Stannard,* 109 Wn.2d 29, 742 P.2d 1244 (1987); *Nucleonics Alliance, Local 1–369 v. WPPSS,* 101 Wn.2d 24, 677 P.2d 108 (1984). The construction of RCW 41.26.120 urged by the City complies with this rule.

The statutory requirement of 6 months' disability

leave *preliminary to the grant of full* retirement serves several purposes. It permits the Board to evaluate the employee's claim without the pressure and need for speed that would be present if the employee were either unemployed and destitute or still working at a job he may well be unable to perform properly. This latter consideration is especially important in view of the fact that this statute applies to police and fire fighters. Furthermore, the 6–month period undoubtedly prevents unnecessary and unjustified grants of disability retirement for conditions that turn out to be temporary within the 6–month period.

None of these purposes would be served here by Napier's receiving a second 6 months of disability leave on his second application based on the same illness. None of the parties dispute that the illness of Napier, though not finally diagnosed at the time the record was assembled, is the same illness in the first and second applications. The director, though he overruled Napier's first award of benefits, granted benefits on the second application. His initial remand of the Board's decision on that second application was based only on the incapacity of the Board to grant immediate disability retirement.

In our view, the Board made the only proper decision under the circumstances. Napier appeared before it with the same symptoms. His treating physician had refused to certify that he was fit to return to work. Napier was in the process of obtaining additional medical diagnosis, treatment and documentation of his illness. Factually there is considerable doubt that Napier returned to work in view of the fact that his treating physician refused to sign a "return to work" form, saying he was fit to return to work. The purposes for which the 6–month waiting period is intended had already been served. The Board concluded, in effect, that the second application of Napier was no more than an extension or renewal of the first application. For those reasons, the first order on Napier's second application—granting immediate disability retirement—was proper.

■ That order was correct, but it was never superseded by the later orders entered by the Board at the direction of

the director and in accord with the Superior Court judgment. In its "Additional Findings, Conclusions and Second Amended Decision and Order" the Franklin County Board erroneously purported to enter a nunc pro tunc order granting Napier disability leave, rather than disability retirement, as of June 6, 1984. This was a change of substance, inasmuch as disability leave is paid for by the City rather than the state retirement fund. It is well established that nunc pro tunc orders are not a proper vehicle for changes of substance in prior orders or judgments. A judgment or decree nunc pro tunc corrects procedural mistakes but not matters of substance. It cannot be used to change the terms of, or remedy omissions in, the prior judgment or decree. *In re Marriage of Pratt,* 99 Wn.2d 905, 909–11, 665 P.2d 400 (1983); *State v. Mehlhorn,* 195 Wash. 690, 692–93, 82 P.2d 158 (1938).

Consequently, the Board's first order on Napier's second application, granting him immediate disability retirement, was correct and is still in effect. The City of Pasco should not be liable for disability leave for Napier for the period of July 6, 1984, to December 6, 1984. The retirement fund should pay Napier disability retirement benefits for the same period.

### ADMINISTRATIVE REMEDIES

The Board claims the City of Pasco failed to exhaust its administrative remedies pursuant to section 41.26.200. Section 41.26.200 plainly applies only to an employee denied benefits by the disability board. It states in part:

> Any person feeling aggrieved by any order or determination of a disability board *denying* disability leave or disability retirement, or canceling a previously granted disability retirement allowance, shall have the right to appeal the order or determination to the director.

The Court of Appeals focused on the words "any order" in this section, but overlooked the fact that the section applies only to orders of the Board denying benefits. Consequently the City could not have appealed the grant of benefits under this section, and cannot be held to have failed to exhaust its administrative remedies.

## Sick Leave

Napier's employment contract provides in pertinent part:

The firefighters will have the protection of either the provisions of sick leave in this Article of the contract, or the disability provisions of LEOFF I [RCW 41.26]. If the leave is of a long–term duration and if the LEOFF I provisions are reasonably available, applications must be made to the LEOFF I system. In such situations where benefits are not available under the LEOFF I system, sick leave provisions of this Article may be utilized.

Exhibit A, at 1.

The trial court and the Court of Appeals concluded that this provision made sick leave benefits available because the stay pending appeal halted the payment of disability benefits under RCW 41.26. Those benefits were, literally, "not available."

The City contends that this conclusion is in conflict with *Longview v. Public Employees' Retirement Bd.*, 97 Wn.2d 521, 646 P.2d 768 (1982). *Longview*, however, says nothing about the meaning of the term "not available" in the contract at issue here. There is no reason to dispute the plain language construction of the courts below.

## Conclusion

On remand, the parties are directed to take all steps necessary to carry out the provisions of this opinion.

1. The State Board of Retirement shall immediately pay Napier state retirement benefits, retroactive to June 6, 1984.

2. Napier shall be awarded his costs and attorney fees at the superior court and Court of Appeals levels, in reasonable amounts as set by the trial judge. This case is remanded for the purpose of setting such fees.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

After modification, further reconsideration denied May 23, 1988.