[No. 5337-3-II.   Division Two.   May 13, 1983.]

KEN DODD, ET AL, *Respondents,* v. GERALD R. GREGORY, ET AL, *Appellants.*

*Robert Verzani,* for appellants.

*Harry Platis,* for respondents.

PETRICH, C.J.—This action was brought by Ken Dodd and Brad Gowin against Gerald Gregory to collect on pool game (billiards) wagers amounting to $12,000. Gregory appeals from a summary judgment for Gowin in the amount of $6,000, one–half of the amount in controversy, and from a denial of his motion to dismiss. Gowin and Dodd cross–appeal for the full amount. Two issues are raised:

1. Is it professional gambling and therefore illegal for a partnership to wager on a game of pool played by one of the members of the partnership and a third person?

2. Can the partnership recover on an illegal gambling debt?

We reverse, holding a partnership engages in professional gambling under RCW 9.46.010 *et seq.* when it wagers on a pool game, and it cannot recover its gambling winnings.

The debt arose out of a series of billiard matches called

"nine ball" wherein there is a sequential elimination of the marked playing balls, the winner of the match being the one who eliminates the ninth ball. In a preliminary match, Dodd and Gowin as partners competed against Gregory and another at a tavern. Each would put in $10 for a total pot of $40. The combined winnings of Dodd and Gowin totaled $240. Then Gregory's partner dropped out and a singles competition continued between Gregory and Gowin. Although Dodd did not play, he and Gowin together financed the singles matches: they pooled their money and continued to bet the entire partnership winnings against the amount placed by Gregory alone. Gregory lost an additional $560 which he paid to the partnership.[1] The play continued the following day and through the night. During the evening the game moved to Gregory's residence where it continued until 9 a.m., at which time Gregory had lost an additional $12,000.

As payment Gregory made out two checks to Dodd, one for $4,000 and another for $8,000, which were dishonored apparently for insufficient funds and stop payment. Dodd and Gowin brought suit on the checks and moved for summary judgment on the theory pool is a game of skill as distinguished from a game of chance, and therefore the partnership's wagers were not prohibited by RCW 9.46.[2] They argued that the Dodd/Gowin partnership entered into an enforceable contract with Gregory that either partner could enforce. Gregory moved to dismiss. The trial court, after considering the evidence in the form of affidavits and depositions of the parties, found the type of billiards to be a game of skill and under the gambling act it was not illegal for Gowin as a player to bet on the matches but it was illegal for Dodd to bet on Gowin. Summary judgment was

---

[1]This litigation does not involve attempts to collect or recoup the winnings or losses of the preliminary match or the $560 losses suffered by Gregory alone.

[2]The chapter has been amended since this event took place. The statutory references are to the version which did not change the law as it relates to this case.

granted in favor of Gowin in the amount of $6,000 and Dodd was allowed nothing.

The findings of the trial court in summary judgment proceedings are superfluous and will not be considered on appeal. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 586 P.2d 860 (1978). In reviewing an order of summary judgment, we engage in the same inquiry as the trial judge. The critical determination is whether there is a genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law. *Sarruf v. Miller,* 90 Wn.2d 880, 586 P.2d 466 (1978). The parties having submitted affidavits and depositions in support of their respective positions for the court's consideration, Gregory's motion to dismiss is treated as a summary judgment motion.

It is clear from the statutory scheme of the 1973 gambling act and the uncontroverted evidence that the Dodd/Gowin partnership engaged in professional gambling, which is illegal. RCW 9.46.220. Professional gambling is defined in RCW 9.46.020(17), which in relevant part provides:

A *person* is engaged in "professional gambling" when:

(a) Acting *other than as a player* or in the manner set forth in RCW 9.46.030 . . ., he knowingly engages in conduct which materially aids any other form of *gambling* activity; or

(b) Acting *other than as a player,* or in the manner set forth in RCW 9.46.030 . . ., he knowingly accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of *gambling* activity; . . .

(Italics ours.) Key words in the definition are "person," "gambling," and "player." Included in the definition of person are natural persons, corporations, partnerships, and associations. RCW 9.46.020(22).

Gambling is risking something of value upon the outcome of a contest of chance. RCW 9.46.020(9). A contest of chance is defined in RCW 9.46.020(7) in the following manner:

"Contest of chance" means any contest, game, gaming

scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein.

The only evidence bearing on the nature of the game appears from the following exchange in Gregory's deposition:

Q Do you consider nine ball a game of skill?
A And luck, yes, both.
Q Predominantly isn't it a game of skill?
A No, I don't think so.
Q Do you ever have control over the game when you are playing nine ball?
A Some, depending on, like I said, luck.

It is clear from the undisputed evidence that the billiard games were established as contests of chance and amounted to gambling activity under the gambling laws of the state.[3]

■ Dodd and Gowin in their pleadings, affidavits, and depositions characterized their arrangement as a partnership in which each of them would pool an identical sum of money to be wagered on the outcome of the match wherein the gains and losses were shared equally. This activity can only be excluded from the proscription of the law if the partnership participated as a player. However, the player exception set forth in the definition of professional gambling does not apply because it is only available to natural persons. RCW 9.46.020(16). The partnership therefore engages in professional gambling when it wagers on a billiard game. Professional gambling is a felony. RCW 9.46-.220. This holding essentially disposes of the second issue.

■ Courts will not enforce an illegal contract and will leave the parties to such a contract where it finds them. *See generally Brougham v. Swarva,* 34 Wn. App. 68, 658 P.2d 1274 (1983); *Brower v. Johnson,* 56 Wn.2d 321, 352 P.2d 814 (1960). At all times pertinent to this litigation Dodd

---

[3]We do not hold as a matter of law that nine ball and other forms of billiards or pool are "contests of chance," but only that the uncontradicted evidence in this case established nine ball as such.

and Gowin have contended that this is a partnership obligation or asset which either partner can collect on behalf of the partnership. They bring this suit on behalf of the partnership account. Since it is illegal gambling for the Dodd/Gowin partnership to wager on a pool game, the aid of the courts is not available to enforce this illegal gambling obligation.

The fact that Dodd and Gowin seek to collect on the dishonored checks does not change the result reached by this opinion. RCW 4.24.090 invalidates checks issued for gambling debts. *Ash v. Clark*, 32 Wash. 390, 73 P. 351 (1903).

Judgment reversed and remanded with direction to enter summary judgment of dismissal in favor of the defendant.

PETRIE and REED, JJ., concur.

Reconsideration denied June 9, 1983.

Review denied by Supreme Court August 12, 1983.