[No. 26835-0-I.   Division One.   August 19, 1991.]

MCKINSTRY CO., *Respondent*, v. AERONAUTICAL MACHINISTS, INC., ET AL, *Defendants*, EVERGREEN STATE CONSTRUCTION, INC., *Appellant.*

*Joseph C. Calmes,* for appellant.

*Stephen R. Black* and *Jensen & Black P.S.,* for respondent.

PEKELIS, J. — Evergreen State Construction, Inc. (ESC) appeals from the denial of its motion for partial summary judgment against McKinstry Co. McKinstry had sought to foreclose a materialmen's lien on a building project owned by Aeronautical Machinists, Inc. (AMI). ESC, the project's general contractor, moved for partial summary judgment contending that because McKinstry failed to give ESC prelien notice, part of its claim was void. The trial court denied ESC's motion, ruling that ESC's failure to comply with RCW 60.04.230 excused McKinstry's failure to give ESC notice.

I

In August 1987, ESC began construction on the Aerospace Machinists District Lodge 751 Headquarters and Meeting Hall (the AMI project). The roofing subcontractor on the project was Puget Sound Roofing, Inc. (PSR). McKinstry provided labor and roofing materials to PSR

for the project. At some point before completion, PSR became insolvent and was unable to pay McKinstry.

On March 17, 1988, McKinstry notified AMI that it was supplying labor and roofing materials to PSR on the AMI project. On May 25, 1988, McKinstry sent a letter to ESC by certified mail. This letter did not specifically state that McKinstry would file a lien against the AMI property in the event of nonpayment. However, in a subsequent letter sent to ESC on August 3, 1988, McKinstry indicated that it would do so if necessary. Thereafter, on September 6, 1988, McKinstry recorded its lien claim.

On May 3, 1989, McKinstry brought a foreclosure action against AMI, the lessee of the building, five other subcontractors with recorded mechanics' liens, and the project's lender. ESC was brought in as a third party defendant and, pursuant to a contractual indemnification and hold harmless agreement with AMI, defended the action on AMI's behalf.

Prior to trial, all lien claims except McKinstry's were satisfied or released. On September 11, 1989, ESC posted a bond as authorized by RCW 60.04.115, which had the effect of releasing the property from McKinstry's lien.

On July 3, 1990, ESC moved for partial summary judgment pursuant to RCW 60.04.020,[1] asserting that it was entitled to prelien notice from McKinstry. Because the May 25, 1988, notice contained no expression of

---

[1] RCW 60.04.020 provides in part:

"Every person, firm or corporation furnishing materials or supplies . . . to be used in the construction . . . of any . . . building . . . shall give to the owner or reputed owner of the property on, upon or about which such materials or supplies or equipment is and/or were used, a notice in writing, which notice shall cover the material, supplies or equipment furnished . . . during the sixty days preceding the giving of such notice as well as all subsequent materials, supplies or equipment furnished . . . stating in substance and effect that such person, firm or corporation is and/or has furnished materials and supplies, or equipment for use thereon, with the name of the contractor or agent ordering the same, and that a lien may be claimed for all materials and supplies, or equipment furnished by such person, firm or corporation for use thereon, . . . and (3) *if the prime contractor complies with RCW 60.04.230, the notice shall also be given to the prime contractor* as defined in RCW 60.04.200(6) . . .." (Italics ours.)

McKinstry's intent to claim a lien, ESC asked the trial court to declare as a matter of law that McKinstry's lien claim for materials supplied before June 4, 1988, was invalid.[2] This date was chosen because notice under RCW 60.04.020 only covers those materials furnished 60 days before the notice is given and thereafter, and June 4 preceded McKinstry's valid August 3, 1988, notice by 60 days.[3]

In response, McKinstry argued that ESC was not entitled to prelien notification because ESC had failed to satisfy the proviso in RCW 60.04.020 which conditions prelien notification on the prime contractor's compliance with RCW 60.04.230.[4] Thus, the critical issue before the court was whether ESC had complied with RCW 60.04-.230(2).

The evidence before the court consisted of the declaration of Joel Bushman, ESC's superintendent for the AMI project, submitted by ESC, and excerpts from Bushman's deposition submitted by McKinstry.

In his declaration, Bushman stated that copies of the various building permits obtained by ESC were posted in the entry area of the job trailer. These included the

---

[2] McKinstry's lien claim was for both materials and labor. However, ESC's partial summary judgment motion did not challenge the labor component of McKinstry's claim. Thus, only McKinstry's claim for materials is disputed on appeal.

[3] As a practical matter, the effect of ESC's motion, if successful, was that McKinstry could only assert a lien on those materials furnished from June 4 to June 10 when, according to McKinstry's filed claim, it completed work on the AMI project.

[4] RCW 60.04.230 states in part:

"(2) For any construction project not subject to subsection (1) of this section costing more than five thousand dollars, the prime contractor shall post in plain view for the duration of the construction project a legible notice at the construction job site containing the following:

"(a) The legal description or the street address and any other identification of the construction site by the prime contractor;

"(b) The property owner's name, address, and phone number;

"(c) The prime contractor's business name, address, phone number, current state contractor registration number and identification."

building permit for the headquarters and meeting hall, the site work permit, and the tenant improvement permit. According to Bushman, the building permit identified AMI as the property owner, listed the address of the site, and identified ESC as the prime contractor both by name and registration number. Also posted inside the trailer was a copy of the job schedule, which further identified ESC as the prime contractor. Finally, Bushman stated that a large sign, approximately 10 feet by 4 feet, was posted at the most prominent corner of the project and identified AMI as the owner and ESC as the prime contractor. There were also two other similar signs posted back to back along one side of the project, which were only slightly smaller.

In his deposition, Bushman testified that he did not post a special notice for the purpose of advising materialmen. He contended that he believed the statutory requirement was satisfied by the signs on the site and by the "job schedule, which has the name and address of our projects, and then it has the company's name and my name." Bushman also testified that the job schedule was used to monitor the project's progress and was posted on a conference room wall inside the jobsite trailer.

In addition to Bushman's deposition, McKinstry also submitted the declaration of John Gundlach, the project manager for McKinstry on the AMI project. Gundlach stated that he:

attended an initial job start meeting on February 3, 1988 in the conference room in the job trailer, which is referred to in Mr. Bushman's Declaration. There was no special notice containing the above information posted. I think there was a board on the left hand side inside the trailer before you enter the conference room which had various permits and OSHA safety notices posted. Every job requires an OSHA notice and the building permit is one of several forms posted so the inspectors can sign off. A material sub to a sub-contractor would not have any need to refer to the building permit. On this job material suppliers did not use the entrance near the job trailer and thus could not observe a building permit tacked up inside the trailer.

On July 10, 1990, the trial court denied partial summary judgment, finding that RCW 60.04.230 required the posting of a special notice to materialmen. Because ESC had not done so, it was not entitled to prelien notice as a matter of law. This ruling effectively decided the entire case. The parties subsequently stipulated to the principal sum claimed by McKinstry, reserving only the question whether McKinstry was entitled to prejudgment interest and attorney's fees. After hearing argument on this question, the court entered judgment in favor of McKinstry on July 30, 1989. The judgment noted that the stipulation did not prejudice ESC's right to appeal from the denial of partial summary judgment. ESC appeals.

## II

ESC contends that the building permit and job schedule posted inside the job trailer and the outdoor signs meet, or substantially meet, the requirements of RCW 60.04-.230. Alternatively, ESC claims that notice under the statute is not required because McKinstry had actual knowledge that ESC was the prime contractor on the AMI project.

On review of a summary judgment, this court must engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). A motion for summary judgment can be granted only if the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

■■ Historically, a prime contractor was not entitled to receive notice of a materialman's intent to file a lien. However, in 1984, the Legislature amended RCW 60.04-.020 to require materialmen to give prelien notice to a prime contractor provided the prime contractor complies with the posting requirements of RCW 60.04.230. Under

RCW 60.04.230(2), "the prime contractor must post in plain view for the duration of the construction project *a legible notice* at the construction job site". (Italics ours.) The notice must contain (1) a legal description or street address of the construction site, (2) the property owner's name, address, and phone number, and (3) the prime contractor's business name, address, phone number and current state registration number and identification. RCW 60.04.230(2). Evidently, the purpose of this notice is to advise materialmen of the prime contractor's desire to receive prelien notification.

We agree with the trial court that the statute clearly contemplates the posting of a separate and distinct notice at the jobsite for the advisement of materialmen. Had the Legislature intended that any legal document, such as a building permit, would demonstrate compliance, it would have said so.

We note that the Legislature has recently done just that. The 1991 amendment to RCW 60.04.230(2) strikes the words "plain view" and "a legible notice" and provides that a properly posted building permit will constitute compliance with this section.[5] Substitute Senate Bill 5497 § 28(2), 52d Legislature (1991). We reject ESC's claim at oral argument that the amended language simply indicates a clarification of the existing statute. Generally, an amendment of an unambiguous statute reflects an intent to change, rather than interpret, existing law. *State v. Standifer*, 110 Wn.2d 90, 94, 750 P.2d 258 (1988); *Port of Edmonds v. Public Empl. Relations Comm'n*, 103 Wn.2d 331, 336-37, 692 P.2d 814 (1985).

Here, the new posting requirement is substantial and indicates an intent to change, not to interpret. The amendment constitutes a meaningful departure from the earlier provision applicable in this case, which provides unambiguously that the prime contractor post "a legible notice". Thus, we conclude that the building permit posted

---

[5] This amendment will be effective April 1, 1992. Substitute Senate Bill 5497 § 32.

inside the job trailer does not satisfy the notice requirement of RCW 60.04.230.

The remaining items which ESC claims provided statutory notice not only fail to satisfy the separate notice requirement, they do not even contain all the information required by RCW 60.04.230. Although the outside signs correctly identify ESC as the prime contractor, they do not list ESC's address, phone number, or registration number, nor do they identify the location of the AMI site. It appears from the record that the job schedule is also incomplete.

Accordingly, we conclude that neither the building permit nor the other notices, singly or combined, constitute "a legible notice" within the meaning of the statute.

## III

ESC argues next that notice under the statute is not required because McKinstry had actual knowledge that ESC was the prime contractor on the AMI project. McKinstry disagrees, citing *Northlake Concrete Prods. v. Wylie*, 34 Wn. App. 810, 663 P.2d 1380 (1983).

In *Northlake*, a subcontractor who had installed a sewer from the main sewer under the street to a house under construction sought to foreclose on a lien filed against the property owner. The owner was not given prelien notice under RCW 60.04.020. On appeal, the subcontractor argued that such notice was not required because the owner had actual notice of the subcontractor's work, citing *Hayes v. Gwinn*, 49 Wn.2d 908, 307 P.2d 1063 (1957) (notice to an owner who directly orders the materials is not required). The court rejected this argument, holding that the *Hayes* exception did not apply because the materials were not sold directly to the owner but were purchased and installed by the subcontractor. *Northlake Concrete Prods.*, 34 Wn. App. at 815.

Here, ESC is in the same position as the subcontractor in *Northlake*. Under these circumstances, an analogous application of the *Hayes* exception would be

warranted only if McKinstry and ESC were in direct privity. That is not the case here. McKinstry's contract on the AMI project was with PSR, not ESC. Thus, McKinstry's actual knowledge that ESC was the project's prime contractor does not relieve it from complying with the statute.

ESC attempts to distinguish *Northlake* by arguing that a prime contractor is different from a materialman and thus should not have to strictly comply with the notice requirements of RCW 60.04.230. ESC claims that the rule that lien statutes shall be strictly construed should be applied only to lien claimants, not where the prime contractor is defending the property owner from a lien claim.

This argument is unpersuasive. Just as a materialman's right to a lien is statutory, so is the prime contractor's right to receive notice. Here, since RCW 60.04-.230 plainly requires the posting of written notice, there is no reason to hold that some other form of notice will suffice.

In sum, we hold that ESC has failed to comply with the posting requirement of RCW 60.04.230. McKinstry's actual notice that ESC was the prime contractor does not relieve ESC from posting the requisite information.[6] Thus, because ESC was not entitled to prelien notice from McKinstry, the trial court properly denied ESC's motion for partial summary judgment.

## IV

Finally, McKinstry requests its reasonable attorney's fees on appeal pursuant to RCW 60.04.130(5) which provides in part:

> The court may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the

---

[6]ESC also contends that the trial judge impermissibly relied on his own personal knowledge and memory regarding the legislative history of RCW 60.04.230 in denying partial summary judgment. However, the basis for the court's ruling is irrelevant because this court reviews an appeal from a summary judgment de novo. *Dodd v. Gregory*, 34 Wn. App. 638, 663 P.2d 161 (findings of the trial court in summary judgment proceedings are superfluous and will not be considered on appeal), *review denied*, 100 Wn.2d 1007 (1983).

action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior court, court of appeals, and supreme court.

McKinstry was awarded attorney's fees by the trial court and has prevailed in this action on appeal. We therefore grant McKinstry's request pursuant to RAP 18.1.

Affirmed.

GROSSE, C.J., and COLEMAN, J., concur.

Reconsideration denied October 3, 1991.

Review denied at 118 Wn.2d 1018 (1992).