[No. 31652-4-I.    Division One.    May 31, 1994.]

LITTLEJOHN CONSTRUCTION COMPANY, *Appellant,* v.
THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent.*

---

*James D. Pack,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Byron L. Brown, Assistant,* for respondent.

BECKER, J. — Littlejohn Construction Company appeals the superior court order affirming the decision and order of the Board of Industrial Insurance Appeals (the Board) against Littlejohn. That decision and order assessed indus-

trial insurance premiums due for Littlejohn's subcontractors' employees pursuant to RCW 51.12.070. Littlejohn contends, as a contractor that did not let the original contract for the project, it cannot be held responsible for paying premiums for its subcontractors' employees. We affirm.

Littlejohn is a wood frame building construction company. General contractors contracted with Littlejohn to perform production framing and other duties on multiunit apartment building projects. Littlejohn in turn hired independent subcontractors to do most of the framing work. Littlejohn paid subcontractors directly, by the square foot or by the job, unless the crew lead wanted Littlejohn to pay the crew members individually.

Each subcontractor, called a *crew lead*, provided the tools, equipment and expertise to complete the work. The crew leads independently hired laborers, called *framing crews*, to construct the frames. Crew leads directly supervised the framing crews, controlled the work, and paid the crew members.

Littlejohn also hired *casual laborers* to run forklifts, deliver supplies and materials, clean up worksites, check the work of the framing crews, and fix mistakes made by the framing crews.

Beginning in September 1987, the Department of Labor and Industries (the Department) audited Littlejohn's industrial insurance account to ascertain the amount of industrial insurance premiums due for nine quarters, from the first quarter of 1986 through the first quarter of 1988. The Department determined that Littlejohn owed premiums for three distinct categories of workers: crew leads, framing crew members, and casual laborers. Except for approximately $21,000, Littlejohn had paid no industrial insurance premiums for any of the three categories. On July 7, 1988, the Department issued a notice and order of assessment to Littlejohn, ordering payment of $208,319.61 in industrial insurance premiums covering the audited period.

Littlejohn protested the order, and when the Department affirmed it, Littlejohn appealed to the Board. The Board

confirmed the Department's authority to assess premiums from Littlejohn, while remanding for recalculation of the amount owed based on issues that are not before us. Following Littlejohn's subsequent appeal, the Superior Court affirmed the critical findings of the Board.

The Board found the crew leads were independent contractors and concluded they were not entitled to mandatory industrial insurance coverage. Neither party assigns error to this finding or conclusion.

The Board further found the casual laborers were Littlejohn's employees, and Littlejohn concedes it owes industrial insurance premiums for this category of employees.

The issue before us is whether the Board properly concluded that Littlejohn owes premiums for the framing crew members employed by the crew leads, Littlejohn's subcontractors.

■ We review the Board's interpretation of the Industrial Insurance Act de novo under the "error of law" standard and may substitute our judgment for that of the Board, although we must accord substantial weight to the agency's interpretation of the law. *Flanigan v. Department of Labor & Indus.*, 65 Wn. App. 119, 121, 827 P.2d 1082 (1992), *aff'd*, 123 Wn.2d 418, 869 P.2d 14 (1994).

At issue here is the Board's interpretation of RCW 51.12.070, which provides in relevant part:

> The provisions of this title shall apply to all work done by contract; the person, firm, or corporation who lets a contract for such work shall be responsible primarily and directly for all premiums upon the work. The contractor and any subcontractor shall be subject to the provisions of this title and the person, firm, or corporation letting the contract shall be entitled to collect from the contractor the full amount payable in premiums and the contractor in turn shall be entitled to collect from the subcontractor his proportionate amount of the payment.

> For the purposes of this section, a contractor registered under chapter 18.27 RCW or licensed under chapter 19.28 RCW shall not be responsible for any premiums upon the work of any subcontractor if:

> (1) The subcontractor is currently engaging in a business which is registered under chapter 18.27 RCW or licensed under chapter 19.28 RCW;

(2) The subcontractor has a principal place of business which would be eligible for a business deduction for internal revenue service tax purposes other than that furnished by the contractor for which the business has contracted to furnish services;

(3) The subcontractor maintains a separate set of books or records that reflect all items of income and expenses of the business; and

(4) The subcontractor has contracted to perform:

(a) The work of a contractor as defined in RCW 18.27.010; or

(b) The work of installing wires or equipment to convey electric current or installing apparatus to be operated by such current as it pertains to the electrical industry as described in chapter 19.28 RCW.

RCW 51.12.070. Littlejohn contends that, as a middleman or subcontractor in the framing enterprise, it is not a "person, firm, or corporation who lets a contract". Because the statute assigns the primary obligation for payment of premiums to the contract lettor, Littlejohn argues that the obligation of contractors and subcontractors is, by necessary implication, secondary.

According to Littlejohn, in a project where owner A contracts with firm B, which in turn subcontracts with company C, and company C fails to pay premiums for its workers, the statute authorizes the Department to assess the premiums "primarily and directly" only against owner A — the original contract lettor — and not against firm B.

The Department contends that a contractor, which like firm B (or Littlejohn) engages a subcontractor to perform part of its work, is indeed a "person, firm, or corporation who lets a contract". RCW 51.12.070. To hold otherwise, the Department argues, would impair its ability to collect premiums.

The Industrial Insurance Act was originally passed in 1911.[1] References to this particular section in appellate decisions have been infrequent. In one case involving an injury

---

[1]The relevant portion of the statute at that time read: "The provisions of this section shall apply to all extra hazardous work done by contract, except that in private work the contractor shall be responsible, primarily and directly, to the accident fund for the proper percentage of the total pay roll of the work and the owner of the property affected by the contract shall be surety for such payments." Laws of 1911, ch. 74, § 17, p. 366.

suffered by a contractor's employee while scaling logs for a lumber company, the court held the worker was necessarily engaged in covered employment to the same extent as if he had been a direct employee of the lumber company. In so deciding, the court expressed a general principle supporting the Department's position in this case:

> When an employer under the act procures the performance of an integral part of its industrial process by an independent contractor, the act applies for the benefit of the independent contractor's employees who perform the service in question, just as if performed directly for the employer, and the independent contractor is an employer under the act so far as the labor in question is concerned.

*Spicer v. Department of Labor & Indus.*, 48 Wn.2d 437, 439, 294 P.2d 643 (1956).

We find further indirect support for the Department's position with respect to Littlejohn in *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961). In *Greenleaf*, a subcontractor's employee brought a third party suit against the prime contractor, which asserted the immunity of an employer. The contractor's argument and the court's decision adverse to the contractor both assumed, as a basis for further argument, that the contractor "would have been obliged to pay the industrial insurance and medical aid premiums of its subcontractor" in the event of the subcontractor's default. *Greenleaf*, at 657.

Neither *Spicer* nor *Greenleaf*, however, squarely addresses Littlejohn's contention that the statute does not allow the Department to assess Littlejohn directly for the premiums upon the work of its subcontractors' employees.

■■ Our primary objective in construing a statute is to carry out the Legislature's intent. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). Guiding our construction is the well-established principle that the Industrial Insurance Act is remedial in nature and must be liberally construed "to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis v. Depart-*

*ment of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

■ Littlejohn acknowledges that the obvious purpose of RCW 51.12.070 is to facilitate and broaden the premium collection powers of the Department. The more the statute facilitates full collection of premiums, the better it serves the accident fund from which compensation is paid.

On the other hand, as Littlejohn rightly points out, the desirability of efficient revenue collection does not justify reading into the statute a mechanism for collection that the Legislature has not authorized. *See, e.g., Homemakers Upjohn v. Russell*, 33 Wn. App. 777, 780, 658 P.2d 27 (1983).

The plain language at the beginning of the statute provides: "The provisions of this title shall apply to all work done by contract". RCW 51.12.070. Because the work of the framing crew members was done pursuant to a contract between their employers (the crew leads) and Littlejohn, their work clearly is covered by the statute.

The statute continues, "the person, firm, or corporation who lets a contract for such work shall be responsible primarily and directly for all premiums upon the work."

The phrase in need of construction is "lets a contract".

■ With no statutory definition of the verb "to let" guiding us, we may apply a dictionary definition to determine the plain and ordinary meaning of a word, unless a contrary intent appears within the statute. As defined in Black's Law Dictionary 903 (6th ed. 1990), to "let" a contract means:

> To award to one of several persons, who have submitted proposals (bids) therefor, the contract for erecting public works or doing some part of the work connected therewith, or rendering some other service to government for a stipulated compensation. Letting the contract is the choosing one from among the number of bidders, and the formal making of the contract with him. The letting, or putting out, is a different thing from the invitation to make proposals; the letting is subsequent to the invitation. It is the act of awarding the contract to the proposer, after the proposals have been received and considered.

Essentially, "to let" means "to select a contractor". It does not mean "to select the general or prime contractor".[2] Presumably, a contractor higher up the chain selected Littlejohn as a framing subcontractor to do a portion of the construction project. Similarly, Littlejohn selected its crew leads as subcontractors to supply the labor for framing. Thus, "a person, firm, or corporation who lets a contract" includes Littlejohn because Littlejohn contracted for the work of the framing crew members.

■ To help clarify the original legislative intent of the statute, we may also turn to its subsequent history. *Rozner v. Bellevue*, 116 Wn.2d 342, 347-48, 804 P.2d 24 (1991). In 1981, the Legislature significantly amended RCW 51.12.070 by setting forth the circumstances in which a contractor would *not* be liable for industrial insurance premiums of subcontractors' employees. The Legislature eliminated liability *only* if the contractor and the subcontractor were (1) registered with the State pursuant to RCW 18.27 or licensed with the State pursuant to RCW 19.28[3] *and* if the subcontractor was (2) truly an independent contractor with its own principal place of business,[4] as well as (3) separate books,[5] and (4) contracted to perform work for the contractor.[6]

■ An amendment is presumed to change the meaning of a statute. *McKinstry Co. v. Aeronautical Machinists, Inc.*, 62 Wn. App. 442, 448, 814 P.2d 251 (1991), *review denied*, 118 Wn.2d 1018 (1992). In this instance, the amendment implies

---

[2] The reference to formal bids in the dictionary definition is not determinative. We are not exclusively concerned here with public works projects, which tend to have bid requirements. Furthermore, to make formal bidding a determinative factor in the definition would frustrate the Department's ability to collect even from the prime contractor in the absence of a formal bid or proposal process.

[3] RCW 51.12.070(1). RCW 18.27 governs registration of contractors with the State. RCW 19.28 regulates electricians and electrical installations, and includes licensing requirements.

[4] RCW 51.12.070(2).

[5] RCW 51.12.070(3).

[6] RCW 51.12.070(4).

that prior to 1981, the liability of contractors for premiums upon the work of their subcontractors was unlimited.

■ Further evidence of legislative intent, similar to that considered in *Rozner*, 116 Wn.2d at 350, is a legislative summary report on the bill (Substitute House Bill 250) containing the 1981 amendment discussed above (Laws of 1981, ch. 128, § 4, p. 456). Describing the Legislature's view of the law prior to amendment, the report states:

> contractors were responsible "primarily and directly" for the industrial insurance premiums for their subcontractors' employees. Although a contractor was permitted to enter into an agreement to have the subcontractor pay the premiums, the contractor was held liable if the subcontractor failed to make payments.

Final Legislative Report, SHB 250, 47th Legislature (1981), at 46.

■ Prior to the 1981 amendment, Littlejohn would have been liable "primarily and directly" for the industrial insurance premiums for *all* work done on its contracts with subcontractors. After the amendment, and according to the law in effect from 1986 to 1988, when Littlejohn's industrial insurance premiums became due, Littlejohn remained primarily and directly responsible for its subcontractors' employees premiums *unless* it protected itself from liability by being registered itself and insuring that its subcontractors were registered.

Although the Board found the crew leads were independent contractors, it made no findings as to whether Littlejohn was a registered contractor or whether any of the crew lead subcontractors were registered contractors. Littlejohn had the burden of proving the Board's decision was erroneous. RCW 51.48.131; *Jamison v. Department of Labor & Indus.*, 65 Wn. App. 125, 133, 827 P.2d 1085 (1992). In the absence of findings that Littlejohn and the subcontractors for which the assessments were imposed were all registered contractors pursuant to RCW 18.27, the Board's decision was correct. We affirm the decision of the Superior Court

requiring Littlejohn to pay the assessments for the framing crew members.

PEKELIS, A.C.J., and GROSSE, J., concur.