173 P.3d 934 (2007)
LEE'S DRYWALL CO., INC., a Washington corporation, Appellant,
v.
STATE of Washington, DEPARTMENT OF LABOR & INDUSTRIES, Respondent.
No. 35613-9-II.
Court of Appeals of Washington, Division 2.
November 27, 2007.
*935 Klaus Otto Snyder, Snyder Law Firm LLC, Sumner, WA, for Appellant.
James Stone Johnson, Attorney Generals Office, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Lee's Drywall Company, Inc. appeals a Board of Industrial Insurance Appeals order assessing Lee's for industrial insurance premiums that one of its subcontractors did not pay. Lee's argues that (1) the Board incorrectly interpreted and applied RCW 51.12.070, the prime contractor liability statute; (2) the Department of Labor and Industries failed to fulfill a statutory duty to collect the premiums from Lee's subcontractor before assessing them against Lee's; (3) the Department improperly implemented new rules without following required rule-making procedures; and (4) these rules unconstitutionally mandate private searches on behalf of the government and impair the contract between Lee's and its subcontractor. Finding no error, we affirm.

FACTS
¶ 2 Lee's Drywall Company, Inc. is a general contractor that primarily works as a drywall subcontractor. In the second quarter of 2003, Lee's subcontracted with Zagy's Drywall to perform drywall work. Lee's obtained proof that Zagy's was licensed, bonded, and insured before subcontracting with the company. But Lee's did not determine whether Zagy's maintained either a principal place of business that would be eligible for a business deduction for Internal Revenue Service (IRS) tax purposes or a set of books or records that reflected all items of income and expenses of the business.
¶ 3 Zagy's submitted regular invoices to Lee's, and Lee's paid Zagy's by check. Jeffrey Lee, president of Lee's, testified that Zagy's was not housed within Lee's Sumner property and that he believed Zagy's did business out of the Federal Way address it registered with the Department.
¶ 4 Zagy's failed to pay the industrial insurance premiums for its employees during the second quarter of 2003. The Department audited Zagy's, but the auditor was unable to *936 ascertain the amount of premiums Zagy's owed from the records Isaias Guerrero, Zagy's owner, provided. And because Guerrero did his books and records on his kitchen table, the auditor concluded that the location did not qualify for an IRS business deduction.
¶ 5 The Department assessed prime contractor liability under RCW 51.12.070 against Lee's to recover the unpaid premiums. After using subcontractor reports from Lee's to determine the amount of premiums Zagy's owed for the work it did for Lee's, the Department issued an order assessing Lee's for $7,937 of Zagy's unpaid premiums.
¶ 6 Lee's appealed the Department's assessment to the Board. The industrial appeals judge (IAJ) issued a proposed decision recommending that the Board affirm the Department's order. The IAJ found that there was insufficient evidence to establish that Zagy's maintained a principal place of business that would be eligible for an IRS business deduction or that Zagy's maintained a set of books and records that disclosed all business income and expenses.
¶ 7 The Board adopted the IAJ's decision, and the superior court affirmed the Board's decision.
¶ 8 The principal issue is whether the Board correctly interpreted RCW 51.12.070 to require Lee's to prove that Zagy's maintained a principal place of business that would be eligible for an IRS business deduction and that Zagy's maintained a set of books or records that disclosed all of its business income and expenses.

ANALYSIS

I. Standard of Review
¶ 9 The Administrative Procedure Act (APA) governs an appeal from an assessment of industrial insurance premiums. RCW 51.48.131. In reviewing decisions of the Board, we apply APA standards directly to the administrative record. Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 296, 49 P.3d 135 (2002) (citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993)). The party asserting error, in this case Lee's, bears the burden of demonstrating the invalidity of the Board's action. RCW 34.05.570(1)(a).
¶ 10 We review questions of law de novo, giving substantial weight to an agency's interpretation of the statutes it administers. Superior Asphalt, 112 Wash.App. at 296, 49 P.3d 135 (citing Everett Concrete Prods., Inc. v. Dep't of Labor and Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988)). We review findings of fact for substantial supporting evidence. RCW 34.05.570(3)(e). Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000).

II. Prime Contractor Liability
¶ 11 Lee's contends that the Board incorrectly interpreted and applied RCW 51.12.070, the prime contractor liability statute.
¶ 12 RCW 51.12.070 imposes primary and direct liability for all industrial insurance premiums on a person, firm, or corporation that lets a contract to another to perform work.[1] But the statute contains an exception from prime contractor liability for registered contractors.[2] In 2003, a registered contractor was not responsible for a subcontractor's premiums if:

*937 (1) The subcontractor is currently engaging in a business which is registered under chapter 18.27 RCW . . . ;
(2) The subcontractor has a principal place of business which would be eligible for a business deduction for internal revenue service tax purposes other than that furnished by the contractor for which the business has contracted to furnish services;
(3) The subcontractor maintains a separate set of books or records that reflect all items of income and expenses of the business; [and]
(4) The subcontractor has contracted to perform:
(a) The work of a contractor as defined in RCW 18.27.010. . . .
RCW 51.12.070.[3]
¶ 13 The Board assessed prime contractor liability against Lee's after concluding that Lee's did not establish that Zagy's maintained a principal place of business that would be eligible for an IRS business deduction or a separate set of books or records showing all business income and expenses.[4]
A. Principal Place of Business
¶ 14 Lee's asserts that the Board erroneously interpreted RCW 51.12.070(2) by requiring Lee's to prove that Zagy's maintained a principal place of business that was "in fact" eligible, not that "would be" eligible, for an IRS business deduction. Br. of Appellant at 17. Relying on Littlejohn Construction Co. v. Department of Labor & Industries, 74 Wash.App. 420, 873 P.2d 583 (1994), Lee's maintains that it had to prove only that Zagy's was truly an independent contractor with its own principal place of business.
¶ 15 Statutory interpretation is a question of law that we review de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). In interpreting a statute, we look for the legislature's intent; if a statute's meaning is plain on its face, we follow that plain meaning without resorting to rules of statutory construction. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4. If, however, a statute is ambiguous, we employ various rules of statutory interpretation to find the legislature's intent. Whatcom County v. Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
¶ 16 Lee's concedes that RCW 51.12.070(2) is unambiguous. A subcontractor must have "a principal place of business which would be eligible for a business deduction for internal revenue service tax purposes other than that furnished by the contractor." RCW 51.12.070(2). Because this language is not subject to more than one reasonable interpretation, we follow its plain meaning. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4.
¶ 17 Lee's reliance on Littlejohn is misplaced. In that case, the court held that a subcontractor may be liable for its own subcontractor's premiums. Littlejohn, 74 Wash. App. at 427-29, 873 P.2d 583. As part of its analysis, the court considered the legislative history of the prime contractor liability statute, including the addition in 1981 of the exception at issue here. Littlejohn, 74 Wash. App. at 427, 873 P.2d 583. The court recited the exception's four requirements, citing to RCW 51.12.070(1)-(4) in footnotes. Littlejohn, 74 Wash.App. at 427 & nn. 3-6, 873 P.2d 583. It summarized RCW 51.12.070(2) as essentially requiring the subcontractor to be "truly an independent contractor with its own principal place of business." Littlejohn, 74 Wash.App. at 427, 873 P.2d 583 (citing RCW 51.12.070(2)). But the court was not interpreting the language of RCW 51.12.070(2); it was interpreting the statute's legislative history. Because the statute is unambiguous, we do not look at the legislative history to find the legislature's intent. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 *938 P.3d 4. And Lee's suggested interpretation is improper because it ignores the language requiring that the principal place of business "would be eligible for a business deduction for internal revenue service tax purposes." See State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (court may not delete words from an unambiguous statute).
¶ 18 In addition, Lee's points to nothing in the record supporting its argument that the Board interpreted RCW 51.12.070(2) to require Lee's to show that Zagy's maintained a principal place of business that was "in fact" eligible for an IRS tax deduction. The Board consistently used the statutory language "would be eligible" in its discussion and findings. Board Record (BR) at 25-26. The Board did not erroneously interpret RCW 51.12.070(2).
¶ 19 Lee's also argues that the Board erred in finding insufficient evidence to establish that Zagy's met the requirements of RCW 51.12.070(2), pointing to Jeffrey Lee's testimony that Zagy's was not housed within Lee's Sumner office and documents showing that Zagy's was registered at a Federal Way address.
¶ 20 The Board found that:
Sufficient evidence was not presented to establish that Zagy's Drywall had a principal place of business which would be eligible for a business deduction for IRS tax purposes other than that furnished by the contractor for which the business had contracted to furnish services during the second quarter of 2003.
BR at 26.
¶ 21 Under the internal revenue code, a taxpayer is not eligible for a business deduction for use of a dwelling unit that the taxpayer also uses as a residence. 26 U.S.C. § 280A(a). An exception allows a deduction to the extent it is allocable to a portion of the dwelling unit that the taxpayer uses exclusively as the principal place of business on a regular basis. 26 U.S.C. § 280A(c)(1)(A). The term "principal place of business" includes a place that the taxpayer uses for business administration or management if there is no other fixed location for the business. 26 U.S.C. § 280A(c)(1).
¶ 22 Lee's bore the burden of proving that the Department incorrectly assessed the premiums against him. RCW 51.48.131. Although Jeffrey Lee's testimony showed that Zagy's did not use Lee's offices as its principal place of business, Lee's did not establish that Zagy's maintained a separate place of business that would be eligible for an IRS business deduction. The auditor's testimony, on the other hand, showed that Guerrero used his kitchen table to conduct Zagy's business. Lee's presented no evidence that this use was exclusive or regular such that Zagy's kitchen table would be eligible for an IRS business deduction.
¶ 23 Lee's asserts that the fact that Guerrero did Zagy's books and records on his kitchen table does not establish that no other portion of his home was eligible for an IRS tax deduction. It also asserts that Guerrero's residence "would be" eligible for an IRS tax deduction if he met all the requirements of 40 U.S.C. § 280A(c). But Lee's burden was to prove that Zagy's met the requirements of RCW 51.12.070(2), not that Zagy's could possibly meet the requirements. And Lee's presented no evidence that Zagy's maintained a principal place of business, on Guerrero's kitchen table or anywhere else, that Guerrero used exclusively to conduct Zagy's business. The Board did not err in so finding.
¶ 24 Lee's also complains that a contractor has no authority to enter a subcontractor's residence to determine whether the subcontractor uses some portion of the residence exclusively for business purposes on a regular basis and that a contractor is not required to become an expert in interpreting and applying the internal revenue code. As the trial court noted, however, the exception in RCW 51.12.070 creates "a statute of tax avoidance, not tax imposition." Report of Proceedings (RP) at 5. Before 1981, a contractor was directly and primarily liable for all subcontractors' premiums without exception. See Littlejohn, 74 Wash.App. at 427-28, 873 P.2d 583; see also Laws of 1981, ch. 128, § 4. The exception now provides that a contractor is directly and primarily liable for a subcontractor's premiums unless it protects itself from liability by ensuring *939 that its subcontractors meet all of the exception's requirements.[5]Littlejohn, 74 Wash.App. at 428, 873 P.2d 583.
¶ 25 It is the contractor, not the subcontractor, that obtains the benefit of the exception. And it was the legislature, not the Department, that created the exception's requirements and placed the burden on the contractor, the party seeking to avoid the tax, to prove them. The "obvious purpose" of RCW 51.12.070 is to facilitate and broaden the Department's collection powers. Littlejohn, 74 Wash.App. at 426, 873 P.2d 583. We do not question the wisdom of a statute, even if the results seem unduly harsh. Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997) (citing Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993)). We cannot ignore the legislature's clear directive that to avoid liability for Zagy's industrial insurance premiums, Lee's must meet the statute's requirements.
B. Separate Books or Records
¶ 26 Relying on arguments similar to those for the principal place of business requirement, Lee's also asserts that the Board erred in requiring it to prove that Zagy's maintained a separate set of books and records that "in fact" reflected all items of income and expenses of Zagy's business. Again, we disagree.
¶ 27 As with the principal place of business requirement, RCW 51.12.070(3)'s language is unambiguous. A subcontractor must maintain "a separate set of books or records that reflect all items of income and expenses of the business." RCW 51.12.070(3). Because this language is not ambiguous, we again follow its plain meaning. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4.
¶ 28 Lee's reminds us of the Littlejohn court's summary of the prime contractor liability exception. The court summarized RCW 51.12.070(3) as requiring that the subcontractor maintain "separate books." Littlejohn, 74 Wash.App. at 427, 873 P.2d 583. As with the court's summary of the second requirement, the court was not analyzing the statute's language but instead was examining its legislative history. Littlejohn, 74 Wash. App. at 427, 873 P.2d 583. And interpreting RCW 51.12.070(3) as requiring only that a subcontractor maintain separate books would improperly ignore the words "that reflect all items of income and expenses of the business" from the statute. See J.P., 149 Wash.2d at 450, 69 P.3d 318 (court may not delete words from an unambiguous statute).
¶ 29 Lee's complains that the Board required Lee's to prove that Zagy's maintained a separate set of books and records that "in fact" reflected all items of income and expenses. But RCW 51.12.070(3) contains no conditional language. The Board did not err in failing to add conditional language to the statute. See J.P., 149 Wash.2d at 450, 69 P.3d 318 (court may not add words to an unambiguous statute). The Board did not erroneously interpret RCW 51.12.070(3).
¶ 30 Lee's also argues that the Board erred in finding that there was insufficient evidence to establish that Zagy's met the requirements of RCW 51.12.070(3), pointing to the regular invoices Zagy's submitted to Lee's, the fact that Lee's paid Zagy's by check, and the auditor's testimony that Guerrero "did his books and records on his kitchen table." Br. of Appellant at 21-22.
¶ 31 Again, Lee's bore the burden of showing that the Department incorrectly assessed the premiums against it. RCW 51.48.131. The regular invoices and cancelled checks support a conclusion that Zagy's maintained records of at least its dealings with Lee's. But the auditor testified that Guerrero did not produce a complete set of records for the Department audit. And Lee's produced no further evidence that Zagy's maintained records of all income, including income from sources other than Lee's, or any business expenses. The trial court did not err in finding that Lee's did not present sufficient evidence to prove that Zagy's maintained a separate set of books and records that reflect *940 all items of income and expenses of the business.
¶ 32 Lee's again objects that it has no authority to inspect its subcontractors' books and records. It also faults the Department for failing to conduct a more thorough investigation of Zagy's records, arguing that the Board should have ruled that the Department failed to present sufficient evidence that Zagy's books and records were incomplete. But the legislature imposed the burden of proof on contractors who seek the benefit of the exemption from prime contractor liability. Neither the Board nor this court can ignore the legislature's clear directive.
¶ 33 The Board did not err in interpreting RCW 51.12.070 or in finding that Zagy's did not meet the requirements for the prime contractor liability exception.

III. Duty to Collect Premiums from Zagy's
¶ 34 Lee's next argues that the Department failed to fulfill a statutory duty to attempt to collect premiums from Zagy's before assessing the premiums against Lee's.
¶ 35 Unless a subcontractor meets all the requirements of the prime contractor liability exception, a contractor is responsible "primarily and directly" for all industrial insurance premiums on the work. RCW 51.12.070. There is nothing ambiguous about this language. Because Lee's did not establish that Zagy's maintained a principal place of business that would be eligible for an IRS business deduction or a set of books or records reflecting all business income and expenses, Lee's is primarily and directly responsible for the premiums Zagy's owed for the work it did for Lee's and the Department may assess the premiums against Lee's.
¶ 36 But Lee's contends that the Department had a duty to attempt to collect the premiums from a successor company Guerrero started after Zagy's went out of business. A successor to a business is liable for the business's industrial insurance premiums. RCW 51.16.200. Nothing in the successor liability statute requires the Department, however, to attempt to collect insurance premiums from a successor to a subcontractor where prime contractor liability exists. Similarly, Lee's asserts that the Department should have initiated an action against Zagy's to collect the premiums. RCW 51.16.150 provides that the Department may initiate an action at law to collect sums due from a defaulting employer. But the statute does not require the Department to take such action. Rather, the statute provides this right of action in addition to any other remedy the Department may have. RCW 51.16.150. Although these statutes may authorize the Department to attempt to collect the premiums from Guerrero or a successor company to Zagy's, they do not create a statutory duty to do so.
¶ 37 Because Lee's was primarily and directly liable for Zagy's industrial insurance premiums, the Department did not err in assessing prime contractor liability against Lee's.

IV. Rulemaking
¶ 38 Lee's next asserts that the Department promulgated a rule requiring physical verification of a subcontractor's principal place of business and books and records without following proper rulemaking procedures.
¶ 39 When the Department issued Lee's the notice of prime contractor liability, it included a document titled "Prime Contractor Liability in the Construction Industry." BR Exhibit 12. This document lists the requirements for the prime contractor liability exception (including the fifth requirement added in 2004). It then describes how a contractor can verify a subcontractor's status, stating:
You must also physically verify your subcontractors:
A. Maintain a complete set of books and records that account for all of the business income and expenses.
B. Work out of a principal place of business that qualifies for an IRS business deduction. To qualify, the place of business *941 must be used regularly and exclusively for the business.
BR Exhibit 12.
¶ 40 With this argument, Lee's attempts to raise the question of what efforts would satisfy the statute. As we earlier noted, this issue is not before us. Lee's made no attempt either physical or otherwise to determine that Zagy's had a separate tax deductible office and kept books recording all business income and expenses. And the Department did not assess Lee's for failing to physically verify the necessary information. It assessed Lee's because Lee's made no attempt to meet the statutory elements. We decline to consider Lee's argument that the Department improperly adopted the "physically verify" standard or that this standard unconstitutionally mandates private searches on behalf of the government and impaired the contract between Lee's and Zagy's.
¶ 41 Affirmed.
We concur: HOUGHTON, C.J., and VAN DEREN, J.
NOTES
[1] The first paragraph of the statute reads:

The provisions of [the industrial insurance act] apply to all work done by contract; the person, firm, or corporation who lets a contract for such work is responsible primarily and directly for all premiums upon the work. The contractor and any subcontractor are subject to the provisions of this title and the person, firm, or corporation letting the contract is entitled to collect from the contractor the full amount payable in premiums and the contractor in turn is entitled to collect from the subcontractor his or her proportionate amount of the payment.
RCW 51.12.070.
[2] RCW 18.27.020 requires a person, firm, or corporation who contracts to perform construction work to register with the Department.
[3] In 2004, after the relevant time period in this case, the legislature amended RCW 51.12.070 to add a fifth requirement, that the subcontractor has an industrial insurance account in good standing with the Department or is a self-insurer. See Laws of 2004, ch. 243, § 2. The parties agree that the pre-2004 version applies here. For simplicity, this opinion refers to the former version of the statute simply as RCW 51.12.070.
[4] Zagy's was a registered contractor under chapter 18.27 RCW, and the parties stipulated that Zagy's contracted to perform the work of a contractor as defined in RCW 18.27.010.
[5] Most of Lee's oral argument focused on its perceived difficulties in complying with the statute (e.g., invading Guerrero's home; need for tax expertise). But the issue of what would be a reasonable attempt to comply with the statute is not before us. Lee's made no effort to meet the two requirements at issue here.