[No. 54992–3.   En Banc.   July 7, 1988.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v. JOHN AUMAN, *Respondent.*

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v. FRED S. CHAPMAN, *Respondent.*

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v. KEVIN CLARK, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Robert G. Swenson, Assistant,* for appellant.

*David B. Vail,* for respondents.

GOODLOE, J.—This case presents the issue of whether cost of living adjustments (COLA) on disability pensions should be computed from the amount the claimants received after reduction for prior receipt of a lump sum payment for permanent partial disability, or from the amount which the claimants would have been entitled to had they not received a lump sum permanent partial disability award. We hold that COLA should be computed from the amount owing to the claimants after reduction for prior receipt of any lump sum permanent partial disability awards.

Each of the claimants was injured in the course of employment and was granted one or more permanent partial disability awards. At some later time, each claimant then was ruled to be permanently and totally disabled. Upon being ruled permanently and totally disabled, each claimant became eligible for monthly disability pension payments; the amount of the monthly payments due each claimant was reduced to reflect the amount already paid as a lump sum permanent partial disability payment.

Each claimant receiving monthly disability pension payments is entitled to periodic COLA. According to long–standing practice, the Department of Labor and Industries computed the COLA due each claimant according to the amount owing to that claimant after reduction of the monthly award to reflect the lump sum permanent partial disability awards already received. The claimants challenged the Department's computation before the Board of

Industrial Insurance Appeals. The board ruled that COLA should be computed on the basis of the amount which each claimant would have received had no reduction been made for prior lump sum permanent partial disability payments. The Pierce County Superior Court affirmed the board's decision. The Department appealed to the Court of Appeals. The Court of Appeals consolidated the separate causes, and certified them to this court. This court accepted certification. We reverse.

A worker who becomes permanently partially disabled as a result of a work related injury is entitled to a lump sum payment for the disability according to a schedule set forth in RCW 51.32.080. A worker who becomes permanently totally disabled as a result of a work related injury is entitled to a monthly pension, the amount of which is determined according to RCW 51.32.060. If a worker is permanently partially disabled and received a lump sum award for that injury, then later becomes permanently totally disabled, the monthly disability pension to which that worker is entitled as compensation for the total disability will be reduced to reflect the lump sum payment already received for the permanent partial disability. RCW 51.32.080(2).

Monthly disability pensions are periodically increased by COLA as specified in RCW 51.32.075. According to RCW 51.32.075, each July 1,

> the amount of compensation to which they [the claimants] are entitled [is multiplied] by a fraction, the denominator of which shall be the average monthly wage in the state under RCW 51.08.018 for the fiscal year in which such person's right to compensation was established, and the numerator of which shall be the average monthly wage in the state under RCW 51.08.018 on July 1st of the year in which the adjustment is being made.

RCW 51.32.075(3). The issue in this case concerns the interpretation of the phrase "the amount of compensation to which they are entitled".

The Department has consistently construed RCW 51.32-.075 to require COLA increases in disability pensions based upon the amount of monthly payments owed to each claimant *after* reduction for prior lump sum payments made for permanent partial disability. According to this interpretation, "the amount of compensation to which [the claimants] are entitled" is the actual amount paid to them, which is an amount reduced to reflect the lump sum award for permanent partial disability under RCW 51.32.080(2). According to this method, the amount received for monthly pension benefits is increased by a percentage of itself each year and thus, theoretically, the actual purchasing power of the pension remains roughly constant, the percentage increase making up for the effects of inflation.

The claimants argue that "the amount of compensation to which they are entitled" refers not to the actual amount of the pension benefits paid after reduction to reflect prior lump sum awards for permanent partial disability, but rather to the amount of benefits which *would have been due* had there been no reduction for lump sum permanent partial disability awards. We find this argument unpersuasive. According to this interpretation, each year a claimant's disability pension would be increased by a fraction of the entire value of a permanent total disability claim, including the amount the claimant was previously paid in a lump sum at the time the claimant was found to be permanently partially disabled. Under this theory, the amount of a claimant's pension would not merely increase to keep pace with inflation, but would increase an additional amount insofar as the amount previously paid in a lump sum is considered in computing the COLA. Thus, if a claimant received a lump sum payment and invested it, the claimant's purchasing power for that sum would be increased for inflation twice: first, the claimant would receive a return on the investment (*e.g.,* interest), plus each year the claimant's pension would be increased by a percentage of the amount received in pension *and* a percentage of the amount *already received* in the lump sum award.

"[S]tatutes should receive a sensible construction to effect the legislative intent and, if possible, to avoid unjust and absurd consequences." *State v. Vela,* 100 Wn.2d 636, 641, 673 P.2d 185 (1983). *See Pasco v. Napier,* 109 Wn.2d 769, 773–74, 748 P.2d 1108 (1988). We find that RCW 51.32.075 is unambiguous. The amount to which claimants are entitled is that amount owed them after any deductions for lump sum payments previously received. To construe RCW 51.32.075 to allow COLA based upon an amount to which claimants would have been entitled if they had not previously received awards for permanent partial disabilities would be to alter the plain meaning of the statute so as to give an unfair bonus to those claimants who received prior lump sum awards.

We reverse the Superior Courts and reinstate the Department's original awards allowing COLA computed on the basis of the monthly disability pensions due the claimants after reduction for prior lump sum payments for permanent partial disability.

DOLLIVER, DORE, CALLOW, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—I dissent. The majority reverses the trial court and reinstates the Department's original awards computed on the basis of the monthly disability pensions due the claimants after reduction for prior lump sum payments for permanent partial disability. The trial court, like the majority, found the statute to be unambiguous but reached a different conclusion than the majority. The trial court and this court are the beneficiaries of an extensive memorandum decision prepared by Judge Norman B. Stough of the Board of Industrial Insurance Appeals. I believe Judge Stough reached the correct conclusion and find his memorandum opinion convincing. He stated:

The enactment of RCW 51.32.075 AND 51.32.072 (both initially enacted in 1975) was to provide a cushion against the eroding of the value of pension payments to

injured workers in inflationary times. RCW 51.32.072 provides that all pensioners whose right to compensation was established prior to July 1, 1971 should receive an amount equal to one–half of the state average wage each month, without regard to the amount of original entitlement, or pension reserve. This statutorily fixed amount increases automatically as the state average wage increases. RCW 51.32.075 provides cost of living increases for those whose right to compensation was established on or after July 1, 1971 by use of the formula discussed above. As applied by the Department this formula does differentiate between those who have received a prior permanent partial disability award and those who have not.

This interpretation by the Department clearly establishes four classes of injured workers who are recipients of pension benefits. The first class is those who have received a permanent partial disability followed by a pension and whose rights were established prior to July 1, 1971. The second consists of those pensioners who had not had a prior permanent partial disability award deducted from their pension reserve, and whose right to compensation was established prior to July 1, 1971. The third class consists of those injured workers whose right to compensation was established on or after July 1, 1971 and who have not had a prior permanent partial disability award deducted from their pension reserve. The last class, with which we are here concerned, is made up of those injured workers whose right to compensation was established on or after July 1, 1971 and from whose pension reserve a prior permanent partial disability award has been deducted. Each of the first three groups receives the full benefit of cost of living increases while the last group receives only a proportional share of such increases.

The Department's method of applying the cost of living formula under RCW 51.32.075 to the monthly pension payments can only be justified by interpreting the phrase ". . . The amount of compensation to which they are entitled . . ." to be their monthly pension payment as established after reducing the pension reserve by the amount of prior permanent partial disability award. It is this interpretation that is at issue in this appeal.

The intent of the *proviso* in RCW 51.32.080 is to prevent double recovery by the injured worker by treating the permanent partial disability award as an advance on pension payments. *Trayle* [*v. Department of Labor & Indus.,* 70 Wn.2d 141, 422 P.2d 520 (1967)]. The Department is thus entitled to recover the permanent partial disability (or advance) from future pension payments. The reduction of pension payments for lump sum payments is set out in RCW 51.32.120 and 51.32.130, and has the same effect as the *proviso* in RCW 51.32.080. The only effective difference is that one instance involves lump sums paid to the pensioner prior to the award of his pension, while the other is concerned with lump sum payments made after the pension reserve has been established. This scheme is reiterated in the last paragraph of RCW 51.32.072 which provides: "In cases where money has been or shall be advanced to any such person from the pension reserve, the additional amount to be paid under this section shall be reduced by the amount of monthly pension which was or is predicated upon such advanced portion of the pension reserve."

As noted above, the Department's method of computing the pension reserve is to first determine the amount of compensation to which the injured worker is entitled, then multiplying this amount by a statistical figure obtained from actuarial tables. This pension reserve amount is then reduced by any lump sum payment made to the injured worker, and the amount of compensation to which the worker is entitled is then reduced by an amount sufficient to allow the Department to recoup the prior lump sum payment. It cannot seriously be argued that the legislature intended to reduce the cost of living increases *only* for those whose right to compensation was established after July 1, 1971 and who have had a prior award deducted from their pension reserve. RCW 51.32-.072 does not discriminate between those who have and those who have not received a lump sum payment, and whose right to compensation was established before July 1, 1971. The inescapable conclusion is that the legislature intended the phrase "The amount of compensation to which they are entitled" in RCW 51.32.075 to be that amount first established by the Department pursuant to RCW 51.32.060, before reducing the pension reserve fund by any previous or subsequent lump sum payment to the

injured worker. . . . If the amount deducted from the amount of compensation to which the injured worker is entitled remains constant over the life of the annuity the Department will have recovered the lump sum payment, and the injured worker will not have received double recovery. This amount will remain constant only if the phrase, "The amount of compensation to which they are entitled" in RCW 51.32.075 is defined as the amount of compensation to which the claimant was entitled originally, established as the basis for computing the pension reserve fund, as set forth in RCW 51.32.060 paragraphs one through twelve and paragraph sixteen. The present method of computing cost of living increases on the amount of monthly payments to the pensioner works not only to prevent the pensioner from a double recovery of the prior lump sum payment, but effectively works to prevent the injured worker from receiving the full cost of living increase to which he is entitled.

It should be noted that the method used by the Department in computing cost of living increases will eventually produce an anomaly that could not have been intended by the legislature in enacting RCW 51.32.072 and 51.32.075. The eventual proportional reduction of increases for a pensioner injured on July 1, 1971 who has a prior permanent partial disability reduction may well reduce his monthly benefit below the amount received by a pensioner injured on June 30, 1971 and who received the same permanent partial disability award.

Proposed Decision and Order, at 10–14.

For these reasons I believe the result stated by the majority creates a result inconsistent with the intent of the Legislature. I would affirm the Superior Courts.

PEARSON, C.J., and BRACHTENBACH and ANDERSEN, JJ., concur with UTTER, J.