[No. 51244-7-I. Division One. September 8, 2003.]

ROBERT C. MESSER, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Brock D. Stiles* (of *Stiles & Stiles, Inc., P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Richard Steven Puz, Assistant,* for respondent.

COLEMAN, J. — Robert C. Messer appeals the calculation of his pension benefits by the Department of Labor and Industries (Department). He claims that the Department improperly relied upon an annuity chart (Table C) based upon outdated life expectancy data from 1979-81. He also claims that the Department's method for recouping a previously paid permanent partial disability award results in an excessive reduction of monthly pension benefits.

Because substantial evidence supported the use of Table C and the Washington Supreme Court has decided that the proper method for calculating pension benefits when the injured worker has previously received a lump-sum permanent partial disability award is the one the Department used here, we affirm.

## FACTS

Robert C. Messer sustained a workplace injury at Belmark Industries on December 16, 1986. At the time, his wages were $2,288 per month. Based on this salary, Messer's original accident fund reserve amount (OAR) was $1,168.89. By 2000, Messer's monthly benefits were $2,053.85, which represented the OAR amount multiplied by an annual cost of living adjustment (COLA). In 1995, Messer received a lump-sum award of $43,041.68 for permanent partial disability (PPD).

On December 3, 2000, the Department determined that Messer was totally and permanently disabled and placed him on a pension effective February 1, 2000. Because injured workers are not entitled to both a PPD award and a pension based upon total permanent disability, the Department determined that the PPD award would be treated as an advance on his pension that would be paid back over

time. The Department calculated the payback amount as follows:

> Step One: Mr. Messer's age at the nearest birthday was determined to be 51.
>
> Step Two: Mr. Messer's age of 51 was used to obtain an annuity factor from Table C of 138.30.
>
> Step Three: The annuity factor of 138.30 was multiplied by the original accident fund reserve amount (OAR) of $1,168.89 to arrive at the present value of the pension, before any deductions, of $161,629.83.
>
> Step Four: The PPD amount ($43,041.68) was divided by the present value of the pension ($161,629.83) to arrive at .26630, which is the percentage of the present value of the pension Mr. Messer had previously received in PPD awards.
>
> Step Five: The percentage of .26630 was then multiplied by the OAR of $1,168.69 to obtain the amount of $311.22, which was then deducted from the OAR of $1,168.69 to arrive at the total monthly pension benefit from the accident fund of $857.47.
>
> Step Six: The total monthly pension benefit from the accident fund of $857.47 was multiplied by the COLA factor of 1.75741 to arrive at the total maximum monthly pension benefit amount of $1506.93, of which $857.47 is from the accident reserve fund and $649.46 is for COLAs from the supplemental pension fund.

Br. of Appellant at 3-4.

As a result of the Department's calculations, Messer's monthly benefit was reduced from $2,053.86 to $1,506.93.

## DISCUSSION

■ The first issue that we address is Messer's challenge to the accuracy of Table C. On appeal from the superior court, this court reviews the trial court's findings for substantial evidence. *Ravsten v. Dep't of Labor & Indus.*, 108 Wn.2d 143, 146, 736 P.2d 265 (1987).

Table C was created in 1986, based in part upon life expectancy data from 1979-81. Based upon evidence that

the life expectancy of a 51-year-old male has increased since 1979 and that the Department has been revising Table C to reflect these changes, Messer claims that Table C is unreliable. The State's response is that Table C is accurate and it is the only approved annuity table that complies with RCW 51.44.070(1).

RCW 51.44.070(2) provides that the annuity value for every case "shall be determined by the department based upon the department's experience as to rates of mortality, disability, remarriage, and interest." At the hearing, the Department provided testimony establishing that Table C is based upon the Department's actual experience with mortality rates of injured workers in Washington. The Department provided additional evidence that general population life expectancies tend to be higher than those of injured workers and that for some injured workers, their life expectancies have increased, but for others they have decreased.

Each year, the Department reviews the pension reserve fund to monitor the accuracy of Table C's actuarial predictions. Internal and external audits on the annuity values verify their accuracy. The Department also provided testimony that Table C was valid for use in Messer's case from an actuarial standpoint. Although the Department had begun revising those figures, the new table had not yet been approved for use at the time of the hearing.

■ Messer's expert witness, an accountant, testified that life expectancies for United States males have increased since 1980. In 1998, the life expectancy for a 51-year-old male was 26.8 years, greater than the 21.3 years indicated in Table C. The accountant testified that he was not familiar with either the statutory requirements for the Department's annuity tables or the mortality rates of Washington injured workers. Thus, he was not qualified to render an opinion regarding the validity of Table C.

■ RCW 51.44.070(1) requires the Department to apply to each case an annuity value based upon its actual experience. Table C was the only annuity value table available

at the hearing that met this requirement, and the Department presented testimony that Table C was actuarially valid. Although life expectancies of United States males have increased since 1980 and the Department has been updating Table C to reflect changes in the mortality rates of Washington workers, this does not mean that Table C was not valid for use in this case. We conclude that substantial evidence supported the Department's use of Table C.

Next, Messer contends that he is entitled to receive the full cost of living adjustment on the original reserve fund amount before any deductions for prior permanent partial disability payments are made. Messer does not challenge the Department's calculations for the payback amount, but rather believes that the Department's method of calculating the COLA after deducting the $311.22 payback amount from the OAR results in an excessive loss of benefits, and that the COLA should be calculated on the reserve fund amount before any deductions are made.

██ The purpose of the PPD deduction is to ensure that there is no double recovery of benefits to the claimant. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 296, 916 P.2d 399 (1996). "When interpreting a statute, it is the court's duty to ascertain and carry out the intent of the Legislature." *Clauson v. Dep't of Labor & Indus.*, 79 Wn. App. 537, 540, 903 P.2d 518 (1995). The purpose of the Industrial Insurance Act, Title 51 RCW, is to reduce the injured worker's suffering and economic loss by providing compensation, with doubts to be resolved in favor of the worker. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

Under RCW 51.32.080(4), the PPD award must be deducted from the pension reserve fund as follows:

> If permanent partial disability compensation is followed by permanent total disability compensation, any portion of the permanent partial disability compensation which exceeds the amount that would have been paid the injured worker if permanent total disability compensation had been paid in the first instance, shall be deducted from the pension reserve of

such injured worker and his or her monthly compensation payments shall be reduced accordingly.

RCW 51.32.080(4). According to Messer, this language is ambiguous because it does not define how monthly compensation shall be "reduced accordingly" and because it does not justify the Department's decision to use a method that pays Messer less than if he had simply been placed on a total disability pension at the outset, which is contrary to the statutory language. The State disagrees, arguing that its method comports with a 1988 Supreme Court decision, *Department of Labor & Industries v. Auman*, 110 Wn.2d 917, 756 P.2d 1311 (1988), which approved the Department's method of deducting the PPD amount from the reserve amount before applying the COLA.

■■ In 1988, the Supreme Court, in a 5-4 decision, held "that COLA should be computed from the amount owing to the claimants after reduction for prior receipt of any lump sum permanent partial disability awards." *Auman*, 110 Wn.2d at 918. That decision reversed the determinations of the Board of Industrial Insurance Appeals and the superior court that the PPD deduction should occur after the COLA formula is applied. The Supreme Court reasoned that under RCW 51.32.075(3), the COLA should be applied only to the amount of compensation to which the claimant is "entitled," and because the claimant was not entitled to the PPD portion of the OAR amount, the claimant was not entitled to COLA on that portion. *Auman*, 110 Wn.2d at 920. Specifically, the COLA statute states that "[t]he adjustment shall be determined by multiplying the amount of compensation *to which they are entitled* by a fraction . . . ." RCW 51.32.075(3) (emphasis added). Because RCW 51-.32.080(4) provides that the PPD deduction comes from the pension reserve amount, not from the total monthly benefit or the adjusted amount, *Auman* held that the Department's method of applying the COLA after deducting the PPD was consistent with the statute. *Auman*, 110 Wn.2d at 921. The *Auman* court further held that permitting claimants to obtain a cost of living adjustment on a sum to which they

are not entitled, i.e., that amount that was deducted from the OAR amount, would permit a double recovery because the claimant would receive the COLA on the PPD, as well as any theoretical proceeds from investment of the original PPD payment. *Auman*, 110 Wn.2d at 920.

Messer first argues that because RCW 51.32.080(4) authorizes deductions from the pension reserve fund but not from the supplemental adjustment fund from which COLAs are drawn, he has a preestablished right in the COLA that he was receiving up until the time he was placed on a pension. And the statutory language for COLA permits only "further adjustments," leaving intact past adjustments. RCW 51.32.075(3).

We reject this strained statutory interpretation because there is no basis for concluding that the legislature intended to authorize the Department to essentially freeze a previously granted COLA increase and subsequently grant it each following year. The COLA is designed to allow pension benefits to keep pace with inflation. Accordingly, it is only a device used for determining current benefit payments, not a stand-alone entitlement that can be granted despite a reduction to the underlying pension reserve fund. The *Auman* court clearly held that a claimant is not "entitled" to COLA increases on a portion of the OAR amount that must be deducted. *Auman*, 110 Wn.2d at 920.

Messer next argues that the Department's method impermissibly penalizes a claimant by excessively reducing his benefits beyond what is necessary to prevent a double recovery, because the monthly loss of benefits exceeds the present value of the PPD award. But this argument was rejected by *Auman*. *See Auman*, 110 Wn.2d at 924 (Utter, J., dissenting) (noting disparity between benefits paid to workers who received PPD awards before receiving pension and to those who immediately received pension). The legislature has made no changes to the statutes, and we presume that its silence indicates approval of the *Auman* interpretation. *See Ballinger v. Dep't of Soc. & Health Servs.*, 104

Wn.2d 323, 329, 705 P.2d 249 (1985). We therefore affirm the Department's decision.

GROSSE and APPELWICK, JJ., concur.

Review denied at 151 Wn.2d 1021 (2004).