[No. 25094-6-III.   Division Three.   January 22, 2008.]

TAMMY J. RHOADES, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Darrell K. Smart* (of *Smart, Connell & Childers, PS*), for appellant.

*Robert M. McKenna, Attorney General,* and *Anastasia R. Sandstrom, Assistant,* for respondent.

¶1 SCHULTHEIS, A.C.J. — If a worker becomes entitled to a pension as a result of being adjudged permanently totally disabled after having received a lump sum for a permanent partial disability, the Department of Labor and Industries (Department) treats the previously paid award as an advance on the pension. *Trayle v. Dep't of Labor & Indus.*, 70 Wn.2d 141, 422 P.2d 520 (1967). The Department therefore deducts the amount of the lump sum award from the worker's pension reserve, resulting in a corresponding reduction in monthly pension payments. RCW 51.32.080(4). The annuity value of a worker's pension is based on rates of mortality, disability, remarriage, and interest as determined by the Department, considering the experience of the reserve fund in these respects. RCW 51.44.070(1). Annual cost of living adjustments authorized by RCW 51.32.075(3) are calculated on the pension benefit amount after deducting the previously paid lump sum, which results in a lower adjustment than the worker would have received if the worker had not been previously paid for a partial permanent disability. *Dep't of Labor & Indus. v. Auman*, 110 Wn.2d 917, 756 P.2d 1311 (1988).

¶2 Tammy Rhoades, the worker in this case, appeals the Department's calculation of her monthly pension amount. She contends that table C, the annuity table used to calculate her pension reserve, is outdated, its interest rate is too high, and it should differentiate on the basis of gender, and she argues that the Department incorrectly calculated her cost of living adjustment on her pension payment. She also claims a violation of Washington's equal

rights amendment (ERA), WASH. CONST. art. XXXI, § 1, and Washington's Law Against Discrimination, chapter 49.60 RCW.

¶3 We conclude that substantial evidence in the record supports the conclusion that table C is not inconsistent with the enabling statute and the Department correctly calculated Ms. Rhoades' cost of living adjustment. We also reject Ms. Rhoades' claims under the ERA and our discrimination statute. We therefore affirm.

## FACTS

¶4 Ms. Rhoades filed a claim with the Department after she was injured in the course of employment at Mt. Adams Care Center on March 29, 1987. In 1992, the Department found that Ms. Rhoades had a permanent partial disability owing to a low back impairment. The Department awarded her a permanent partial disability benefit in a lump sum of $6,750.00. Ms. Rhoades appealed, and in March 2001, the Department determined that Ms. Rhoades was totally disabled and she was placed on the pension rolls. The Department affirmed this order after reconsideration in September 2002. The Department deducted from Ms. Rhoades' pension reserve $6,786.02, the amount of the $6,750.00 lump sum award plus $36.02 paid by the Department as interest on the permanent partial disability award. This resulted in a monthly deduction of $42.24 from Ms. Rhoades' pension payments, which included interest paid on the permanent partial disability award. The Department applied cost of living adjustments to Ms. Rhoades' monthly pension payments after first deducting $42.24 for the earlier paid permanent partial disability award.

¶5 Ms. Rhoades disagreed with the Department's calculation of her monthly pension amount, specifically the Department's use of table C to calculate her pension reserve. She therefore appealed the September 2002 pension order to the Board of Industrial Insurance Appeals (Board). Before the Board, Ms. Rhoades claimed that table C, a table

used to calculate the present value of her pension entitlement over her lifetime based on data contained in the United States mortality rates in effect in 1980, is outdated and it should differentiate on the basis of gender. She also asserted that table C—which is based on an interest rate equal to 6.5 percent that is, in effect, the interest rate the Department charges over the course of repaying the lump sum permanent partial disability award—charges an excessive interest rate. Finally, she asserted that the Department incorrectly calculated the annual cost of living adjustment on her pension payment.

¶6 On February 12, 2004, the Board found that the Department's September 2002 order was correct except for the application of $36.02 interest. It remanded for the entry of an order deducting the sum of $6,750.00 paid out for the permanent partial disability award from the pension reserve. Ms. Rhoades appealed to the superior court, which affirmed the Board's order. This appeal follows.

## DISCUSSION

BOARD REVIEW

¶7 This court reviews the Board's findings of fact to see if they are supported by substantial evidence, and the Board's conclusions of law to see if they flow from the findings of fact. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999). "Substantial evidence will support a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true." *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006) (citing *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)). The Board's interpretation of the Industrial Insurance Act, Title 51 RCW, is reviewed de novo, and substantial weight is accorded an agency's interpretation of the law. *Littlejohn Constr. Co. v. Dep't of Labor & Indus.*, 74 Wn. App. 420, 423, 873 P.2d 583 (1994).

¶8 A worker who becomes permanently partially disabled as a result of a work-related injury is entitled to a

lump sum payment for the disability according to the schedule set forth in RCW 51.32.080. A worker who becomes permanently totally disabled as a result of a work-related injury is entitled to a monthly pension in an amount determined by RCW 51.32.060. The pension is paid out of a pension reserve established by the Department based on the estimated present cash value of the worker's monthly payments. RCW 51.44.070(1). The annuity values "shall be based upon rates of mortality, disability, remarriage, and interest as determined by the department, taking into account the experience of the reserve fund in such respects." *Id.*

¶9  If a worker becomes permanently totally disabled after having received a lump sum permanent partial disability award for that injury, the worker's pension reserve is reduced by the lump sum amount previously paid. RCW 51.32.080(4). RCW 51.32.080 is meant to prevent double recovery by the injured worker by treating the permanent partial disability award as an advance on pension payments. *Trayle*, 70 Wn.2d at 142-43.

¶10  Annual cost of living adjustments (COLAs) are applied to increase the monthly pensions for permanently totally disabled workers. RCW 51.32.075(3). Our Supreme Court held almost 30 years ago in *Auman* that the COLA computation was meant to be based on the net pension, after reduction for the lump sum award. *Auman*, 110 Wn.2d at 921. Ms. Rhoades asserts a number of reasons to support her claim that *Auman* does not apply.

¶11  According to Ms. Rhoades, *Auman* lacked meaningful legal analysis and it was not decided on the benefit of actuarial evidence. *Auman* was based on the court's interpretation of the legislature's directive that when calculating the annual COLA,

> "the amount of compensation to which they [the claimants] are entitled [is multiplied] by a fraction, the denominator of which shall be the average monthly wage in the state under RCW 51.08.018 for the fiscal year in which such person's right to compensation was established, and the numerator of which

shall be the average monthly wage in the state under RCW 51.08.018 on July 1st of the year in which the adjustment is being made."

*Id.* at 919 (alterations in original) (quoting RCW 51.32-.075(3)).

¶12 The worker in *Auman* interpreted the phrase "the amount of compensation to which they are entitled" to mean the amount the worker is entitled to before reduction for the previously paid lump sum under RCW 51.32.080(4).[1] *Id.* at 920. The Supreme Court held that the "amount of compensation to which they are entitled" means after the reduction for the lump sum payment. The court reasoned that to calculate the COLA on the pension prior to the deduction for the lump sum would permit a double recovery for inflation because the claimant would receive the COLA on the pension as well as the theoretical proceeds from investment of the original lump sum payment. *Id.* Further, since RCW 51.32.080(4) provides that the lump sum deduction comes from the pension reserve amount, not from the total monthly benefit or the adjusted amount, the court noted the Department's method of applying the COLA after deducting the permanent partial disability award was consistent with the statute. *Id.* at 921. Neither the remedial nature of the Industrial Insurance Act nor actuarial evidence would affect this reasoning.

¶13 Ms. Rhoades contends that a past permanent partial disability award bears no relation to a current COLA meant to compensate for current inflationary trends. Thus, she argues, the requirement that the COLA apply to "the amount of compensation to which they are entitled" refers unambiguously to the amount a pensioner would receive but for the reduction required by RCW 52.32.080(4). The Department correctly points out that there is no such but-for language in RCW 51.32.075.

---

[1] *Auman* actually addressed former RCW 51.32.080(2) (1986), which was recodified as RCW 51.32.080(4) (Laws of 1993, ch. 520, § 1).

¶14 Ms. Rhoades also asserts that the court's more recent decision in *Stuckey*[2] supports reexamination of the *Auman* decision. In *Stuckey*, the court held that the lump sum reduction provision, RCW 51.32.080(4), governs when permanent partial disability is followed by a pension, irrespective of the procedural circumstances under which the order is ultimately decided. 129 Wn.2d at 299-300. The court disapproved of the Department's use of a later enacted statute, RCW 51.32.240, to recover previously paid permanent partial disability when the finding of partial disability is reversed and a pension is awarded. RCW 51.32.240 authorizes the Department to recover benefits paid because of mistake, fraud, or erroneous decisions later reversed on appeal. The *Stuckey* court concluded that RCW 51.32.080(4), not RCW 51.32.240, applies when a pension follows permanent partial disability. There is no merit to Ms. Rhoades' claim that *Stuckey* encourages a more expansive application and interpretation of RCW 51.32.080(4) than when *Auman* was decided.

¶15 Ms. Rhoades also criticizes *Auman* for not specifying the type of reduction at issue—whether the Department was recouping the permanent partial disability amount through a percent of the pension reserve to which RCW 51.32.080(4) was applied to the reduction, rather than a lump sum to which RCW 51.32.240 was applied to the reduction. *Auman* clearly applied RCW 51.32.080, the same statute at issue here.

¶16 Finally, Ms. Rhoades argues that neither *Auman* nor *Messer*[3] addressed the gender discrimination issue raised here. The Department properly argues that Ms. Rhoades' claim of discrimination has no bearing on the COLA method, which is the same for both men and women.

¶17 As previously stated, RCW 51.44.070(1) requires that annuity values "be based upon rates of mortality, disability, remarriage, and interest as determined by the

[2] *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 299, 916 P.2d 399 (1996).

[3] *Messer v. Dep't of Labor & Indus.*, 118 Wn. App. 635, 77 P.3d 1184 (2003).

department, taking into account the experience of the reserve fund in such respects." The Department uses a 6.5 percent interest rate assumption in table C to calculate pension reserves. Ms. Rhoades argues for a lower rate. She presented testimony through economist John W. Booth, who suggested a rate of 3 percent. But Mr. Booth admitted that the suggested 3 percent interest rate was not based on the pension reserve's performance; Mr. Booth has never examined the Department's portfolio for the reserve fund.

¶18 The Department presented evidence through its senior actuary, William Vasek, that when it establishes the interest rate used in its annuity tables, it considers the experience of the pension reserve fund. Aside from poor investment returns in 2002 due to the collapse of WorldCom and Enron, the normal rates of return on the pension reserve fund investments since 1987 have been higher than 6.5 percent.

¶19 Mr. Vasek testified that a 3 percent interest rate would be too low in view of the pension reserve's experience. And Mr. Booth agreed that between 1987 and 2000 the Department's investment portfolio earned more than 6.5 percent. He also agreed that the Department's senior actuary had a better understanding about the portfolio's performance, and that between 1987 and 2000 the Department's investment portfolio earned more than 6.5 percent. According to Mr. Vasek, the 6.5 percent interest rate reflected the actual experience of the reserve fund. Mr. Vasek was aware that outside reviewers had indicated that the 6.5 percent interest rate "was on the upper end of what would be reasonable." Administrative Report of Proceedings (ARP) (Vasek) at 86.

¶20 Mr. Booth calculated Ms. Rhoades' monthly pension amount using the 2000 United States female mortality tables. He used a gender-based table on the assumption that "on average females live longer than males." ARP (Booth) at 61. Mr. Booth concluded that the use of the 2000 United States female mortality table would result in a $2.68 increase in Ms. Rhoades' monthly pension payment—

from $350.46 to $353.14. Mr. Booth admitted that he performed no studies on the mortality rates of Washington men and women who receive benefits from the pension reserve.

¶21 Mr. Vasek testified that table C is not based solely on the 1980 census data regarding male mortality, but it is "based on the experience of the reserve fund, and the experience of the reserve fund was similar to the male mortality experience of the general population." ARP (Vasek) at 83. These are proper criteria upon which to base the percentage rate.

¶22 Ms. Rhoades also argues that the Department improperly relied on table C because it is based on outdated and unreliable data. The same argument was made and rejected in *Messer*, 118 Wn. App. at 637. Noting that RCW 51.44.070(1) requires the Department to use an annuity value based upon its actual experience, the court determined that "Table C was the only annuity value table available at the hearing that met this requirement, and the Department presented testimony that Table C was actuarially valid." *Messer*, 118 Wn. App. at 639-40. The same is true here.

¶23 Further, RCW 51.44.080 requires that the Department annually "expert" the reserve fund, i.e., determine the relation of the outstanding annuities at their present value to the cash on hand or at interest belonging to the fund. If there is a greater sum in the reserve fund than the annuity value of the outstanding pension obligations as determined by the experting, the surplus goes to the state fund; if there is a deficit, it is made up from the state fund. RCW 51.44.080. Mr. Vasek testified that the experting process verifies that the calculations of the pension reserve amounts are accurate. The test results show "each year . . . that the pension tables accurately and reasonably reflect the experience of the reserve fund within the year." ARP (Vasek) at 42.

¶24 Substantial evidence in the record supports the conclusion that table C is based on statutory factors and is

actuarially valid. Substantial evidence also supports the conclusion that table C is consistent with the mortality, disability, remarriage,[4] and interest as determined by the Department, and takes into consideration the experience of the reserve fund in these respects.

EQUAL RIGHTS AMENDMENT CLAIM

¶25 Ms. Rhoades frames her claim as a violation of the equal rights amendment, WASH. CONST. art. XXXI, § 1. Constitutional issues are reviewed de novo. *Centimark Corp. v. Dep't of Labor & Indus.*, 129 Wn. App. 368, 373, 119 P.3d 865 (2005) (citing *Shoop v. Kittitas County*, 149 Wn.2d 29, 33, 65 P.3d 1194 (2003)).

¶26 The Department asserts that Ms. Rhoades did not raise the constitutional issue below. We note, however, that Ms. Rhoades devoted a paragraph to the issue in her brief to the superior court. The Department also claims that the record is insufficient to review the issue. But the insufficiency of the evidence is addressed in the Department's analysis. We will therefore address the claim.

¶27 The ERA provides, "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." WASH. CONST. art. XXXI, § 1. The ERA's broad protection goes beyond that of the equal protection clause of the federal constitution and the privileges and immunities clause of the state constitution. *State v. Brayman*, 110 Wn.2d 183, 200-01, 751 P.2d 294 (1988); *Darrin v. Gould*, 85 Wn.2d 859, 871, 540 P.2d 882 (1975). If equal treatment is restricted or denied on the basis of sex, the classification is discriminatory and, thus, violates the Washington Constitution. *Marchioro v. Chaney*, 90 Wn.2d 298, 305, 582 P.2d 487 (1978), *aff'd*, 442 U.S. 191, 99 S. Ct. 2243, 60 L. Ed. 2d 816 (1979).

¶28 In *Brayman*, an ERA violation was claimed by operation of facially neutral amendments to the driving while intoxicated statutes, which redefined the per se

---

[4] Ms. Rhoades does not challenge the remarriage factor in RCW 51.44.070(1).

offense to provide that a person is guilty if he or she had 0.10 grams or more of alcohol per 210 liters of breath. 110 Wn.2d at 186, 200. The plaintiffs asserted that the blood/breath ratio used to determine intoxication under the statute was based on studies of mostly male subjects, and women generally have lower blood/breath ratios and smaller average lung capacity than men. The amendments were discriminatory against women, the plaintiffs claimed, because the breath testing would have the effect of overestimating blood alcohol for women. *Id.* at 202-03. Rejecting the claim, the court stated:

> Although the record demonstrates that breath alcohol levels may not accurately represent blood alcohol levels in particular individuals, this evidence alone does not establish that the breath alcohol standard falls more harshly on women as a class. Respondents bear the burden of showing that the Legislature's decision to use a breath alcohol standard to prove impairment falls more harshly on women. Here, no studies have been made of the differences in blood-breath ratios between men and women. At best the record shows that the [standard used] may have a hypothetical disparate impact on women.

*Id.* at 203-04.

¶29 The same reasoning applies here. The actuarial evidence presented by Ms. Rhoades shows only a hypothetical disparate impact on women who receive disability pensions after having received a lump sum permanent partial disability award. Actuarial science can predict the average lifetime of a group of people as a whole, but it cannot determine when any individual person will die. There will be people—both men and women—who live longer or shorter lives than predicted by table C. Therefore, she cannot show that table C works a hardship on women as a class.

DISCRIMINATION CLAIM

¶30 Washington's Law Against Discrimination is a broad remedial statute, the purpose of which is to eliminate

and prevent discrimination on the basis of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical disability. RCW 49.60.010. The law declares that the right to be free from such discrimination is a civil right enforceable by private civil action by members of the enumerated protected classes. RCW 49.60.030(1), (2).

¶31 The Department observes that it is not clear whether the circumstances presented by Ms. Rhoades are covered by chapter 49.60 RCW. And even if it does apply, the Department claims, Ms. Rhoades did not bring a civil action under chapter 49.60 RCW to allow the court to address the issue. The Department is correct: a civil suit is required. RCW 49.60.030(2). An administrative action and appeal is an inappropriate vehicle for such a claim.

¶32 We affirm the Board's decision. Ms. Rhoades does not demonstrate a violation of the ERA nor raise a claim under Washington's law against discrimination. Ms. Rhoades' claim for attorney fees under RCW 49.60.030(2) is denied.

BROWN, J., and STEPHENS, J. PRO TEM., concur.